Alfred Willoughby and William Kincaid, Respondents, *v.* The Fredonia National Bank, Appellant.

*False representations — lien, under a mortgage, upon land in another State to secure future indorsements — burden of proof on the plaintiff.*

Where the plaintiff, in an action brought to recover money alleged to have been paid to the defendant under the inducement of false representations, seeks to recover upon the theory that the defendant falsely represented that he had a lien upon land in another State, purchased by the plaintiff, by force of a mortgage to secure future indorsements, given by a former owner of the land, stating that certain promissory notes claimed to be covered by the mortgage were made before the plaintiff's purchase of the land, whereas they were in fact made after such purchase, the burden is upon the plaintiff to prove that under the law of the State in which the land is situated no lien could exist, under such a mortgage, by reason of notes made after the mortgagor ceased to own the land.

It is the law of the State of New York that a mortgage to secure future advances or indorsements is valid; is within the Recording Act; is notice to subsequent purchasers and puts them upon inquiry as to the amount of advances or indorsements already made; and it is only by notice to the mortgagee, or other holder of the mortgage, that still further advances or indorsements which shall be equally a lien on the mortgaged premises can be prevented.

APPEAL by the defendant, the Fredonia National Bank, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of Chautauqua county on the 7th day of June, 1892, upon the report of a referee.

*O. W. Johnson*, for the appellant.

*J. G. Johnson*, for the respondents.

DWIGHT, P. J.:

The action was to recover money paid to the defendant by the plaintiffs, induced thereto, as alleged, by certain false representations made by the former to the latter.

The narrative of the case leading up to the allegation of false representations is in substance as recited in the complaint and, somewhat more at large, as follows : In and before the year 1879, one Pemberton was the owner of an undivided interest in a small tract of oil land situated in McKean county in the State of Pennsylvania. He was a borrower of money, and, in January of that year, he gave to one Skidmore a mortgage on the interest mentioned to secure the payment of all notes, to the amount of $2,500, "indorsed or to be indorsed" by Skidmore for him. In February of the same year Skidmore assigned the mortgage to the defendant as collateral security for the payment of all notes so made and indorsed, which should be discounted by it, and in March the mortgage and assignment were both recorded in the proper office in McKean county.

In February, 1881, Pemberton and wife united with the other tenants in common of the property in a conveyance of the entire estate to the plaintiffs. About three years later the defendant, by letter of its cashier, called the attention of the plaintiff Willoughby, who was a resident of Bradford county, to the fact that it held the mortgage ; informed him that it also held notes of Pemberton, secured thereby and unpaid, to the amount of $1,250, and intimated that it might become necessary to resort to a foreclosure of the mortgage for their collection. The plaintiffs seem to have paid no attention to this letter until nearly two years later, when, having a favorable opportunity to make sale of the land, they applied to the defendant to obtain a discharge of the mortgage, and it was at that time

that, as the complaint alleges, the representations were made to the plaintiffs which are the basis of this action.   Those representations, as charged, were to the effect, only, that notes made by Pemberton and indorsed by Skidmore were in the hands of the defendant unpaid to the amount, with interest, of $1,493.50, and that the defendant had a lien on the land above mentioned for that amount. No other representations than those are alleged in the complaint, and it is these representations alone which it is alleged the plaintiffs believed to be true, and in reliance upon which they consented to and did pay the sum demanded by the defendant as a condition of discharging the mortgage.   That was the sum of $746.75, or one-half of the amount, principal and interest, which the defendant claimed to be due on the notes.

The above are, moreover, all the representations which are negatived by the complaint, and this is done by an allegation as follows: " That in fact and in truth the said notes so made by said Pemberton and indorsed by said Skidmore had been before that time fully paid, and that the said mortgage was not a lien on the said land for any sum."

Here was plainly but one representation of a matter of fact alleged to have been made and charged to have been false, viz., that the notes in question were unpaid.   The other representation charged, viz., that the mortgage was a lien for the amount of those notes, was the statement of a conclusion of law, dependent apparently upon the fact previously asserted that the notes were unpaid.   But that fact was fully and concededly established by the evidence, and so it was found by the referee.   Accordingly, the plaintiffs shifted their ground on the trial, and Willoughby was permitted to testify that the representation made by the officers of the defendant at the time the money was paid, and upon which he relied in making such payment, was not, as alleged in the complaint, that the notes were unpaid, but that they were given before the conveyance of the land by Pemberton and his cotenants to the plaintiffs.   That representation, if it was made, was contrary to the fact, as was plainly shown by a written statement of the notes, showing their several dates and a computation of the interest on each note, which was given to Willoughby by the cashier in the same interview in which, as he testified, the representation was made to him that they were all

given before the conveyance of the land to the plaintiffs. The dates shown by the written statement were from July, 1881, to May, 1882, while the conveyance was made in February, 1881.

When the first question was put to Willoughby, as a witness, which pointed to evidence of this character, it was objected to by counsel for the defendant, as incompetent under the pleadings. The objection was a good one, and should have been sustained, if it was insisted upon; but the record shows no ruling on the objection, and no exception. The question was answered, and was followed without further objection, by an extraordinary series of leading questions, by means of which counsel were finally able to draw from their own client — apparently against his own impressions — his assent to the propositions embodied in their questions, to the effect, namely, that the representation made to him by the officers of the bank, was the one last above stated; that he believed such representation to be true, and relied upon it, and that he would not have paid this money for the discharge of the mortgage, except for such belief and reliance; all of which was in direct contravention of the allegations of the complaint in that regard. It is difficult to believe that counsel for the defendant would have submitted, without objection, to such a course of examination of the witness if they had not supposed that they had already an available objection and exception which covered all this class of testimony.

Upon this testimony, though contradicted by the officers of the bank who were present, the referee found that the defendant represented to the plaintiffs that the notes held by it were made by Pemberton while he owned the land. The finding was not *secundum allegata,* nor was it sustained by proof which seems to us at all satisfactory. The referee also found, as upon a question of fact, that the representation that the mortgage was a lien on the mortgaged premises for the amount of the notes of $1,250, was untrue, but he repeats the same finding as a conclusion of law, and with an addition which plainly shows the ground upon which the finding was based; the addition is "that Pemberton after the conveyance by him could create no debt or lien upon the land."

This conclusion of law, which is the only one found in the report (except that the plaintiffs are entitled to judgment), involves, we think, the error into which the learned referee fell, and which must

be fatal to the judgment. Had the mortgage been given on property situated in this State, the finding would have been manifestly erroneous. Because it is perfectly well settled as the law of this State that a mortgage to secure future advances or indorsements is valid; is within the Recording Act; is notice to subsequent purchasers, and puts them upon inquiry as to the amount of advances or indorsements already made; and that it is only by notice to the mortgagee, or other holder of the mortgage, that still further advances or indorsements which shall be equally a lien on the mortgaged premises, can be prevented. See *Ackerman* v. *Hunsicker* (85 N. Y. 43) and the cases cited. In most of these cases the doctrine rests upon the effect of the Recording Act, but in the case of *Shirras* v. *Caig* (7 Cranch, 34) the doctrine is declared to the full extent by Chief Justice MARSHALL, without regard to recording acts, and upon equitable principles of the common law.

There is no finding or evidence in the case of notice to the defendant of the conveyance to the plaintiffs until after the discount of the notes in question. Neither is there any finding as to what is the law of the State of Pennsylvania, either by statute or by the decisions of its courts, in respect to the lien of mortgages of the character in question. We must assume, therefore, that the conclusion of the referee " that Pemberton after the conveyance by him could create no debt or lien upon the land," was based upon an acceptance of the proposition which is urged by counsel for the respondents, on the argument of this appeal, that it was incumbent upon the defendant to show that the law of Pennsylvania was similar in effect to that of this State, before it could assert that the mortgage was a lien for the notes in question. And just here is the error above referred to, viz., the holding, in effect, that the affirmative was with the defendant to show that the lien in question existed. Plainly, the contrary was true. It was the plaintiffs who alleged that the defendant's representation that it had a lien for the amount of the three notes, was false. The burden was upon them to prove it so, and if its truth or falsity depended upon the laws of Pennsylvania, it was incumbent upon them to make proof of those laws. The rule, which lays the burden of proof on the party who alleges a fact, applies to no case more strictly than to one in which the allegation is of fraud or false representations.

For the error pointed out, the judgment should be reversed and a new trial granted.

All concurred.

Judgment appealed from reversed and a new trial granted, with costs to abide the event.