Argued 13 April; decided 2 October, 1899.

### AH FOE *v.* BENNETT.

[58 Pac. 508.]

1. ATTORNEY AND CLIENT.—The relation between attorney and client is a peculiarly confidential one, and all transactions by which the attorney obtains his client's property will be closely scrutinized, the utmost good faith being required.

2. IDEM.—An assignment by a client to his attorney of his interest in a decree of foreclosure will not be set aside, and the client allowed to recover the value of real estate which his attorney procured under the decree, and sold, where the evidence shows that the conduct of the attorney in taking the assignment was characterized by perfect fairness, although, owing to a particular demand for the land, he was enabled to sell it, shortly after the assignment, for a considerable advance over the price paid.

From Coos :   J. C. FULLERTON, Judge.

Suit by Ah Foe against J. W. Bennett. From a decree in favor of defendant, plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *D. L. Watson, James Watson,* and *D. L. Watson, Jr.*, with an oral argument by *Mr. Edward B. Watson.*

For respondent there was a brief and an oral argument by *Mr. Joseph W. Bennett, in pro. per.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit against an attorney to set aside the assignment of a decree and to recover the alleged value of certain real property which was subject to the lien thereof. It appears that C. W. Olive and wife, to secure the sum of $900, executed to plaintiff a mortgage on certain town lots in Coquille City, which were subject to a prior mortgage of $4,000 ; that, a building on said premises having been destroyed by fire, the holder of the prior lien collected the loss from the insurer thereof, reducing his demand to $527.17, whereupon he assigned his mortgage to Robert McCann, who retained defendant to foreclose the same ; that plaintiff, having knowledge of the existence and *bona fides* of the prior lien and of defendant's retainer, also engaged him and J. S. Coke to foreclose his mortgage, but the latter alone instituted the suit, making McCann a party, who, appearing by defendant, filed an answer setting up the prior lien, and a trial being had resulted in a decree foreclosing both mortgages. Plaintiff having informed defendant that he would be able to pay the amount of the prior lien, an execution was issued, in pursuance of which W. H. S. Hyde, who had been appointed receiver, advertised the lots to be sold July 6, 1895, at which time the defendant bid therefor $666.66, the amount of McCann's claim, whereupon the receiver, at defendant's request, adjourned the sale for one week, and from week to week thereafter until the twenty-seventh of that month, but received no other bid therefor. On July 14, 1895, plaintiff having informed defendant that he had only $300 with which to purchase the lots, the latter offered to loan him an amount, sufficient, with what he had, to enable

him to pay McCann's claim, agreeing to accept the certificate of sale as security, and to give him a reasonable time to repay the loan, at the same time telling him of the probability of selling the lots to certain persons as a site for a hotel. Plaintiff accepted this offer, agreeing to call at defendant's office, and complete the arrangements, but the next day told defendant that he could not spare the money he had accumulated, as he wanted to go to China, and offered to assign his interest in the decree to him if he would pay the costs of the suit, and release him from the obligation to pay an attorney fee of $100. Defendant at that time refused the offer, advising plaintiff to defer the contemplated journey, borrow the money, and purchase the property, which he thought might possibly be sold in a reasonable time for more than enough to pay McCann's claim. On July 16, the offer being renewed, W. H. S. Hyde and J. S. Coke, at defendant's request, explained to plaintiff the effect of the assignment, plaintiff remarking that he understood it, and would rather lose the money he had loaned to Olive than miss going to China, whereupon the offer was accepted, and plaintiff's interest in the decree transferred to defendant.

Defendant, on July 24, entered into an agreement with Eugene O'Connell, by which it was stipulated that the latter should bid the sum of $1,800 for said lots, and, upon his paying the amount due McCann, defendant would execute to him a receipt for the remainder of the bid, in consideration of which O'Connell was to convey to defendant an undivided one-half interest in the premises upon the repayment of one-half the sum so expended. On July 27 O'Connell made the bid agreed upon, and, upon its being accepted, he paid the sum of $670.66, the amount due McCann and expenses, and delivered to the receiver defendant's receipt for $1,129.34, and obtained a

certificate of sale. On August 17, 1895, O'Connell, in consideration of $1,400, evidenced by a promissory note payable in five years, assigned said certificate of sale to J. W. Leneve, who thereupon paid Olive and wife $100, and, defendant having delivered to them a receipt purporting to acknowledge the payment of $119, the amount of the decree in excess of $1,800, they executed a deed conveying their equity of redemption in said premises to Leneve, who, with his associates, erected a hotel on the property. The complaint alleges that defendant did not advise plaintiff with regard to his interest in the premises, or his rights under the foreclosure, but took advantage of his ignorance of the English language, and caused him to assign the decree without consideration, believing that he would receive the proceeds of the contemplated sale of the property. The answer having denied the material allegations of the complaint, a trial was had resulting in a decree dismissing the suit, and plaintiff appeals.

1.   Did the plaintiff freely and understandingly transfer his interest in the decree, is the question presented for consideration. The relation existing between an attorney and client being confidential, a court of equity, when appealed to, will not permit an attorney to reap the benefit of a hard bargain, nor allow him to take an undue advantage of his client in his dealings with him, either directly or remotely ; and in a suit by a client to be relieved from an engagement into which he has entered with the attorney he is not compelled to show that there has been any imposition or fraud, for, if the transaction complained of be one in which the relation between the parties could have exerted any influence in the attorney's favor, the burden of establishing its perfect fairness is cast upon him : 3 Am. & Eng. Enc. Law (2 ed.), 333 ;  *Powell* v. *Willamette Valley Ry. Co.*, 15 Or. 393 (15 Pac. 663).

2. A careful examination of the testimony in the light of this rule convinces us that defendant, at the time of the assignment, did not contemplate the sale of the lots to the persons who purchased them; that he fully informed plaintiff in relation to the probable value of the property, and his rights under the decree; that he advised him not to transfer it; and that he did not take advantage of the relation existing between them to obtain such transfer. Whether plaintiff assigned the decree freely depends upon whether he clearly understood the nature and effect of the transaction. While there is some conflict in the testimony as to whether plaintiff could speak the English language, we think it is shown by the preponderance of evidence that he understood it quite well. The evidence further shows that he is a native of China, about thirty or thirty-five years old; that he lived in Coos County, Oregon, where he was employed as a cook in English-speaking families about twenty years; and that he was, therefore, about fifteen years old when first so employed. It is a fact within the common experience of mankind that a young person will comprehend and acquire a knowledge of a foreign language more readily than an older one, and, in view of the fact that courts will take judicial notice of facts generally occurring in the usual course of human lives (12 Am. & Eng. Enc. Law, 1 ed. 199), it would seem that plaintiff must in that time have obtained such a knowledge of the English language as to enable him to comprehend ordinary conversation therein. Plaintiff did not go to China as contemplated, and, though present at the trial, he did not testify thereat. These circumstances, when considered in connection with plaintiff's age when he went to Coos County, and his opportunity to learn the English language, lead us to believe that he understood what was said to him in relation to

the assignment of the decree. If the payment of an adequate consideration were a condition precedent to defendant's right to retain the fruits of his bargain, we think he fully complied therewith. These lots, after being duly advertised, were publicly offered for sale on July 6, 13, and 20, 1895; and when the sale was consummated, on the twenty-seventh of that month, the sum actually paid was the amount so bid and $4 additional as expenses. If the property had been worth much more than this amount, it is probable that some person would have raised the bid. It is true that O'Connell obtained the sum of $1,400 therefor within twenty days of his purchase, but, the sale having been made on long time, a greater sum was probably received than would have been realized if it had been made for cash. The property was purchased as a location for a hotel, but for any other use it would probably not have brought more than the amount due McCann. Plaintiff and defendant knew there was a probability of disposing of these lots for such purpose, but the latter did not think himself warranted in venturing more than one-half the amount due McCann. It was the particular demand, and not the intrinsic value of these lots, which caused their sale to Leneve, and we think, in view of the fact that Olive was insolvent, that defendant paid an adequate consideration for the transfer of the decree, which plaintiff made freely and understandingly. The decree appealed from must be affirmed.          AFFIRMED.