Argued June 16, decided July 21, 1908, rehearing allowed January 12, reargued January 26, former opinion adhered to February 9, 1909.

## PHIPPS *v.* WILLIS.

[96 Pac. 866; 99 Pac. 935.]

ATTORNEY AND CLIENT — DEALINGS BETWEEN — FRAUD — BURDEN OF PROOF.

1. The rule that the party alleging fraud has the burden of proof, and must clearly establish every necessary element, does not apply to dealings between an attorney and his client, and for an attorney, in a deal to sustain a

transaction with his client, advantageous to himself, the burden is on him to show, not only that he used no undue influence in respect thereto, but gave to his client all the information which it would have been his duty to give if he himself had not been interested, and that the client received the same consideration and benefit as he would have received if he had dealt with a stranger.

FRAUD—CIRCUMSTANTIAL EVIDENCE.

2. Fraud may be proved by any circumstance from which it might follow as a legitimate inference, and direct and positive proof is not essential.

ATTORNEY AND CLIENT — TRANSACTIONS BETWEEN — GOOD FAITH OF ATTORNEY—BURDEN OF PROOF.

3. Where a client, in a suit to set aside a mortgage given to his attorney, disclosed a fiduciary relation between them, that he paid the attorney a large amount of money, gave him the exclusive management and control of all the disbursements, and that, growing out of the transaction, he had executed what purported to be a mortgage, which mortgage he signed without knowledge of its contents, intent, or purpose for which it was given, it was incumbent on the attorney to establish, by a preponderance of the evidence, that he was acting in good faith, and that the mortgage was given for a valuable consideration, without which fraud in the execution thereof must be presumed.

WORDS AND PHRASES—"SETTLE."

4. The word "settle" implies a mutual adjustment of accounts between different parties and an agreement on the balance.

EVIDENCE—PAROL EVIDENCE—EXPLAINING TERMS IN MORTGAGE.

5. Where a mortgage recited that it was intended to secure the mortgagee in any sum he might be required to pay on a note made by the mortgagor and mortgagee to a third person, parol evidence that it was understood that a part of the claim should be made from a loan obtained by the mortgagor from a third person, and was so paid, was admissible.

ATTORNEY AND CLIENT—EVIDENCE—SUFFICIENCY.

6. In a suit to set aside a mortgage executed by a client to his attorney, evidence *held* not to establish a valuable consideration for the mortgage, or good faith in its execution, essential to defeat relief.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. COMMISSIONER KING.

This is a suit by Robert, Mary, and Victor Phipps, against William R. Willis, to set aside and cancel, on the grounds of fraud, a mortgage executed on March 23, 1896, payable two years after date, with interest, by plaintiffs to defendant, purporting to have been given to secure the sum of $10,756, with interest, together with any moneys defendant might be required to pay upon a promissory note, dated June 1, 1903, jointly executed by plaintiffs and defendant to S. C. Flint and H. Wollenberg for $4,000, due five years from date, with interest

at 8 per cent per annum. On July 11, 1898, by indorsement and delivery thereof, Willis assigned the mortgage to the First National Bank of Roseburg, as collateral security for a loan of $1,500. About five years later the loan was increased to $4,000, to secure which an assignment of the mortgage in due form was executed. The interest upon the loans mentioned was paid regularly by Willis, and no notice was given plaintiffs that the bank held such mortgage, until a short time before the commencement of this proceeding, when its agent called on plaintiffs, requesting payment. In response to this demand plaintiffs insisted that they had no knowledge of the existence of any mortgage on their property, except one for $5,000, held by the Alliance Trust Company; and shortly thereafter instituted this suit.

Plaintiffs allege, in substance, that the mortgage involved was procured through fraud and misrepresentation; that for and during many years prior to and at the time of the execution thereof defendant had been and was the attorney and legal adviser of the first two plaintiffs above named; that during the year 1896 plaintiffs desired to and did borrow from the Alliance Trust Company the sum of $5,000, and in order to secure the payment thereof, it was necessary for them to give to the company a mortgage on all of their real property in Douglas County, which they executed on March 23, 1896, the preparation of which, with the application therefor, and all papers incident thereto, were intrusted solely to defendant as their attorney; that, at the time of the execution of the mortgage, plaintiffs, without reading any of the papers, and relying upon Willis' representations, to the effect that the instrument in controversy was one of the papers necessary and incident to securing the loan from the Alliance Trust Company, and assuming and believing his statements to be true, executed the mortgage to Willis without knowledge of its contents, or of the fact that it purported to be for the alleged

consideration of $10,756, or for the further security of $4,000, owing to Wollenberg and Flint; that there was no consideration for the mortgage, and that, by reason of the facts alleged, it is void; that Willis is the owner and holder thereof; and that the first notice plaintiffs, or any of them, had of the instrument was on or about February 28, 1905; and a decree is demanded to the effect that the alleged mortgage be cancelled of record, and for costs and disbursements.

A general demurrer thereto being overruled, defendant answered, specifically denying the averments of the complaint. Upon the issues thus made, the cause was referred to a referee who, in the absence of the court, heard and reported the testimony. The court below, in effect, found that the charges of fraud were untrue; that at the time of the execution of the mortgage and settlement of all matters of account between plaintiffs and defendant, there was found to be due defendant the amount expressed in the mortgage ($10,756), pursuant to which the mortgage was executed, and that it was not executed as alleged, under the belief that they were signing only the papers essential to the securing of the loan from the Alliance Trust Company. From a decree dismissing the complaint, plaintiffs appeal.          REVERSED.

For appellant there was a brief over the names of *Mr. James O. Watson* and *Mr. William W. Cardwell*, with an oral argument by *Mr. Watson*.

For respondent there was a brief over the names of *Mr. Dexter Rice* and *Mr. Oliver P. Coshow*, with an oral argument by *Mr. Rice*.

Opinion by MR. COMMISSIONER KING.

1. The first question for determination is one of law, involving the point whether, under the issues, the plaintiffs or the defendant have the burden of proof. Plaintiffs offered evidence to the effect that the mortgagee was their counsel, acting as such throughout the transaction,

53 OR.—— 7

and for 20 years prior thereto had been the attorney
for Robert Phipps and wife in all matters requiring
legal assistance. The establishment of such fiduciary
relation, it is urged, placed the burden upon defendant
to show, by clear and explicit proof, that in respect to
the mortgage he was acting in good faith, that it was
given for a valuable consideration, and that plaintiffs,
when signing it, had knowledge of its contents, and deliv-
ered it for the purposes therein specified. In this plain-
tiffs urge that the defendant has failed, entitling them
to a decree. Defendant insists that since the complaint
charges him with fraud, the burden is upon plaintiffs
to prove, by a clear preponderance of the evidence, every
element of the charges made, without which, the pre-
sumption of honesty and fair dealing, to which he, like
all persons engaged in business transactions, is entitled,
makes a decree of dismissal necessary. Was the *prima
facie* showing thus made sufficient, under the issues, to
shift the burden of proof to defendant, and require of
him, in order to defeat the suit, the same degree of proof
as would be necessary to the maintenance of a suit
brought to foreclose the disputed mortgage? It is the
general rule that the party, alleging and relying upon the
charge of fraud, takes upon himself the burden of proof,
and must clearly establish every necessary element there-
of. 6 Enc. Ev. 8; 3 Elliott, Ev. §§ 2128, 2129; *Keel* v.
*Levy*, 19 Or. 450 (24 Pac. 253). But this rule, like most
others, is subject to exceptions, one of which applies to
dealings between an attorney and his client. Owing to
the necessary confidential relations existing between an
attorney and his client, and to the influence growing out ·
of such fiduciary positions, courts, both of law and equity,
especially the latter, scrutinize most closely the transac-
tions between them. It has accordingly become well
settled that, to enable an attorney, in a dealing of advant-
age to himself with his client, to maintain such transac-
tion, the burden is upon him of showing, not only that

he used no undue influence in respect thereto, but gave to his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the client received the same consideration and benefit as if he had dealt with a stranger. 4 Cyc. 960; 6 Enc. Ev. 10; 3 Am. & Eng. Enc. Law (2 ed.) 333; *Bingham* v. *Salene,* 15 Or. 208, 217 (14 Pac. 523; 3 Am. Rep. 152) ; *Ah Foe* v. *Bennett,* 35 Or. 231, 234 (58 Pac. 508) ; *Hamilton* v. *Holmes,* 48 Or. 453, 459 (87 Pac. 154) ; *Elmore* v. *Johnson,* 143 Ill. 513 (32 N. E. 413: 21 L. R. A. 366: 36 Am. Rep. 401).

2. In *Ah Foe* v. *Bennett* Mr. Justice MOORE, in considering this point, observes: "In a suit by a client, to be relieved from an engagement into which he had entered with the attorney, he is not compelled to show that there has been any imposition or fraud; for, if the transaction complained of be one in which the relation between the parties could have exerted any influence in the attorney's favor, the burden of establishing its perfect fairness is cast upon him." While the courts of a few states appear to hold, in effect, that the presumption against fraud is always approximate to that of a presumption of innocence of crime (*Truett* v. *Onderdonk,* 120 Cal. 581, 588: 53 Pac. 26: *Willoughby* v. *Fredonia Nat. Bank,* 68 Hun. 275: 23 N. Y. Supp. 46), the great weight of authority, especially the decisions of this court, unquestionably recognize that in such cases the onus is upon the person charged with an abuse of his trust. Nor is direct and positive proof essential to the establishment of fraud. It is always permissible to prove it by any circumstances from which it may follow as a legitimate inference; this class of evidence in many instances being the only proof available. 3 Elliott, Ev. §§ 2128, 2129; *Williamson* v. *North Pac. Lum. Co.,* 42 Or. 153, 159 (70 Pac. 387, 532) ; *Kabat* v. *Moore,* 48 Or. 191, 198 (85 Pac. 506).

Applying these rules to the case under consideration, the plaintiff's evidence discloses that prior to and at the

time of the execution of the mortgage Willis had been the attorney, in a large amount of litigation, for Robert Phipps, who had agreed to pay him a fee of $5,000. The litigation for which this fee was to be paid had grown out of the failure of Flem Owens, a warehouseman in that vicinity, for whom Robert Phipps, with other persons, was surety, and involved various proceedings in the state and federal courts. About the time of the inception of the litigation resulting from Owens' failure, Robert Phipps conveyed the land described in the disputed mortgage to Willis, to be held in trust by him as security for the $5,000 attorney fees agreed upon.

The testimony of Robert and Mary Phipps tends to show that, for the purpose of settling in full all outstanding indebtedness against them, application was made to the Alliance Trust Company for a loan of $5,000, to accomplish which Willis conveyed a part of the land to Victor Phipps, a son of Robert Phipps, retaining the rest in his own name. The object in adopting this plan was to procure a larger loan upon the entire tract, which was more readily obtained by segregation of the lands and the procuring of loans thereon separately. Loans thereon were accordingly made by the company aggregating $5,000, of which sum $3,000 was upon the tract previously conveyed to Victor Phipps, and $2,000 upon the land retained by Willis. After the mortgages were given, the land retained by Willis was also conveyed, subject to the mortgage thereon, to Victor Phipps; the evident purpose thereof being to avoid the outstanding judgment liens against his father, the former grantor. When notified by Willis that the loan papers were ready, plaintiffs called at his office for the purpose of executing them. Concerning what there took place, plaintiffs each state, in substance, that, when they arrived the documents had been prepared and ready for their signature, and were lying upon the desk of defendant, who asked each to sign at places designated, stating that all the

papers presented were essential to and connected with
the procurement of the loan from the trust company;
that without either reading or having the instruments
read, they signed them; that the interest on the $5,000
loan was paid by them each year as it came due; that
they heard nothing of any claim against them by Willis
until a short time before the institution of this suit, when
the bank's agent called their attention to the Willis
mortgage, requesting payment; that they denied any
knowledge thereof, and soon thereafter instituted this
suit; that when they affixed their signatures to the papers,
they had no knowledge of any other mortgage, and no
intention of executing any mortgage other than the one
given to the Alliance Trust Company; that they had paid
and reimbursed Willis in full for the attorney fees agreed
on, together with all costs and disbursements advanced
by him in their litigation; and when they signed and
acknowledged the papers, it was understood that the
$5,000 loan was to settle every outstanding claim against
them, and all the money received on the loan was turned
over to Willis for that purpose, and nothing whatever
was due at the time from them to him, leaving no con-
sideration for the execution of the mortgage. With evi-
dence to the above effect, plaintiffs rested. Defendant,
in response thereto, called as a witness his daughter,
Lulu Willis, who testified, in effect, that at the time of
the execution of the mortgage she was stenographer for
her father, and working in his office; that she figured
for him the accounts of all dealings between him and
plaintiffs, and found a balance due him of $10,756, and,
pursuant to his instructions, drew the mortgage, and
was present when it, with the other papers covering the
Alliance Trust loan, was executed; that she does not
remember whether any of the papers were read over to
plaintiffs before signing or not; that at the time the
instruments were signed and acknowledged no one was
present in the room except the plaintiff, defendants, her-

self, and the notary public, she and the notary subscribing as witnesses; that some time after the execution of the papers, Mrs. Robert Phipps called at the office, and requested her father to cancel his mortgage in order that they might procure a greater loan upon the property, but that he said he could not do so, because he had assigned it to the bank. This statement Mrs. Phipps denies. Defendant was called in his own behalf, and corroborated his daughter's statements. C. J. Anderson testified that in March, 1903, while engaged in the real estate business in Portland, he, in response to a request to aid in making a sale of a part of the mortgaged premises, looked the property over, and while in the vicinity called upon Willis, stating that he had a man from Wisconsin, who would soon be there looking for a place to locate a colony, and asked Willis to give him the particulars regarding the Phipps land, and what kind of a "lay-out it was, and what was against it, how the payments should come, and what was against the place," in order that he might sell in accordance with the terms required; that thereupon Willis stated there was a mortgage against the property held by the Portland company, for the sum of $5,000, and that this mortgage was all there was against it at that time; that he subsequently called upon Willis, and made a similar inquiry with a response to the same effect.

3. It is undisputed that plaintiffs paid to Willis from time to time various sums of money, aggregating many thousands of dollars, the exact amount of which does not appear. No effort is made by defendant to show in detail all the disbursements and receipts further than a memoranda thereof, found in his office by his daughter, and introduced in evidence, showing receipts by him, during the time he was attorney for the Phipps, of the sum of $6,644.81, and disbursements to the amount of $7,101.56. If any books were kept of the accounts, further than the two pages of memoranda introduced in evidence,

such fact is not disclosed by the record; and it has the appearance of being merely a summary of various items of account, copied from some record kept of the transactions, and is probably a part of the list of items from which Lulu Willis made her estimate. Willis was asked, on cross-examination, whether he had not been paid by Phipps a vast sum of money, and answered:

"Well, he paid some."

Q. "Did he not pay you as much, taking it altogether, as $10,000, or $12,000, or $15,000?"

A. "I do not recollect the amount. There was considerable money."

And his daughter, who testified concerning his accounts, when interrogated along this line, gave answers of similar import. Again, defendant makes no effort to give a full account of moneys received and disbursed by him, further than as disclosed by the memoranda offered in evidence, together with statements by him and his daughter, to the effect that he had paid certain notes and made certain disbursements specified, among which was $3,466, paid to Hamilton the next day after the receipt of the $5,000 loan, which plaintiffs, as well as defendant's daughter, testify was paid out of moneys received from this loan from the trust company. Notwithstanding the uncontradicted testimony that the $3,466 paid to Hamilton came out of the $5,000 borrowed, Willis includes this as one of the items that constituted the $10,756 specified in the mortgage to him. When the evidence in behalf of plaintiffs was offered, disclosing the fiduciary relation existing between them; that they paid him a large amount of money; in fact that all payments passed through his hands, giving him the exclusive management and control of all the receipts received, and disbursements made by him for plaintiffs; and that growing out of the transaction they had executed what purported to be a mortgage covering a large sum of money, which mortgage plaintiffs signed without knowledge of its contents, intent, or pur-

pose for which it was given—it was incumbent upon Willis to establish by a preponderance of the evidence that he was acting in good faith, and that the mortgage was given for a valuable consideration, without which, fraud in the execution thereof must be presumed. *Wimer* v. *Smith,* 22 Or. 469, 478 (30 Pac. 416).

4. But a meager attempt, however, is made by defendant to account for the funds received. True, both he and his daughter testify that there was a settlement, and that the mortgage involved was given in full satisfaction of all defendant's claims against plaintiffs; but their statements in this respect amount only to an announcement of a conclusion, for, assuming all said by them in reference thereto to be correct, the facts given from which the settlement is inferred are insufficient to justify an inference that an adjustment or settlement of the transactions between them was had. It is shown that defendant and his daughter had figured the accounts constituting defendant's claim, but it does not appear that plaintiffs were either present or had in any manner been consulted, or that the matter was talked over with them. "The word 'settle' has an established legal meaning, and implies a mutual adjustment of accounts between different parties, and an agreement upon the balance." *Baxter* v. *State,* 9 Wis. 38, 44; *Jackson* v. *Ely,* 57 Ohio St. 450, 459 (49 N. E. 792).

5. Measured by this rule, no settlement is shown by defendant. The settlement claimed appears to be based only upon the statement exchanged between them "that this settles everything," without indicating what was meant thereby. Here we find years of transactions, involving the payment of costs by defendant for plaintiffs in numerous law suits, the giving of deeds to him by Robert Phipps to a large tract of real estate, the reconveyance thereof to Victor Phipps, the giving of notes and mortgages, signed by defendant and plaintiffs, securing the payment of the various claims, aggregating many

thousands of dollars, some of which defendant paid, and was reimbursed therefor, which payments, with adjustments of all securities in reference thereto, it would appear, as a logical result of defendant's position, were all determined in a few minutes, and concluded with the expression that "this settles everything." This statement, however, is consistent with plaintiffs' contention that they only intended to sign the papers connected with the $5,000 loan, none of which was received by them, but all of which was intrusted to Willis to settle everything; and, although consistent with Willis' contention that the mortgage to him was intended for the purposes recited therein, his position is not in conformity with the recital in the mortgage, to the effect that it was also intended to secure the mortgagee in any sum he might be required to pay on the $4,000 note against plaintiffs and defendant, payable five years from the date thereof, to Flint and Wollenberg. This unsettled claim, for which defendant asserts he was surety to Flint and Wollenberg, is inconsistent with the theory that an accounting and a settlement in full was had between them. The reference in the mortgage to this contingency is sufficient to admit the parol evidence given in explanation thereof (*Bank* v. *Miller*, 48 Or. 587, 592: 87 Pac. 892), concerning which plaintiffs state that it was understood that $3,466 of this claim should be, and was, paid from the $5,000 received from the trust company. It is clear, therefore, that there was not such a meeting of the minds, or consideration of the transaction between the parties, as to entitle the proceedings had to be termed a "settlement." In fact the entire transaction, as gathered from the circumstances surrounding and leading up to it, strongly tends to rebut any theory of a settlement between them. As indicated, fraud is seldom capable of actual demonstration; it must be gathered from all the circumstances surrounding the transaction in question.

6. Among other circumstances entitled to consideration is that the mortgage to defendant was not given in the usual way, but without a note accompanying it, and although due two years after date thereof, nine years elapsed without plaintiffs being called upon to make a payment thereon, and without having their attention directed thereto. It was deposited by Willis at the bank as collateral security for money borrowed for his use and benefit, and held in this manner since July 11, 1898, without the mortgagors being requested to make a payment on either the principal or interest, during which time, and but a short time before the institution of this suit, defendant, by letter, borrowed money from his alleged mortgagors without in any manner intimating they were his debtors; and when, with a view of procuring a purchaser for the property, the real estate agent inquired of him whether there were any incumbrances thereon, he responded to the effect that there were no liens against the land except the mortgage to the trust company. Defendant qualifies this by the statement that he said there was none other except that held by him; but other circumstances alluded to indicate his memory to be at fault in this respect. Other illustrations of circumstances inconsistent with the defendant's contention may be found, but the evidence suggested is ample to show that defendant has failed, either to establish by a preponderance of the evidence a valuable consideration for the mortgage, or good faith in its execution; by reason of which it becomes unnecessary to determine whether the transaction was, in fact, fraudulent, as averred, or without consideration.

It follows that the decree of the court below should be reversed, and one entered canceling and annulling defendant's mortgage.                    REVERSED.

Decided February 9, 1909.

## ON PETITION FOR REHEARING.

[99 Pac. 935.]

PER CURIAM: We have carefully considered the questions presented on rehearing, and, after a re-examination of the case, are fully satisfied with the conclusions reached in the former opinion, which are hereby confirmed.

DENIED: REVERSED.