Argued March 29, reversed and suit dismissed May 29, 1923.

## DE YULIO et ux. *v.* BROWNELL et ux.

### (215 Pac. 576.)

**Mortgages—Mortgagors' Knowledge of True Consideration Shown.**

1. In a suit by a husband and wife to cancel a mortgage for fraudulent representations, evidence *held* to show that plaintiffs executed and delivered it with full knowledge that it was given to defendant as security for payment of an attorney's fee, and not to enable him to secure bail for the husband's release from jail.

**Fraud—Must be Clearly Proved.**

2. Fraud is never presumed, but must be proved by clear, satisfactory, and convincing testimony.

**Cancellation of Instruments—Executed Contract not Canceled for Fraud Unless Clearly Shown.**

3. A court of equity should exercise its power to cancel an executed contract only in a clear case, and never for fraud, unless clearly shown.

**Contracts — Deeds — Inadequacy of Consideration Insufficient to Avoid Unless so Great as to Show Fraud.**

4. Inadequacy of consideration is not a ground for cancellation of a contract or conveyance unless so great as to furnish convincing evidence of fraud.

**Attorney and Client—Fair Contract Fixing Amount of Attorney's Compensation for Services to be Performed Upheld.**

5. Under Section 561, Or. L., as well as at common law, a contract between an attorney and his client fixing the amount of the former's compensation for services to be performed will be upheld when fair and honest.

**Attorney and Client—Attorney not Permitted to Reap Benefit of Hard Bargain or Take Undue Advantage of Client.**

6. A court of equity properly appealed to by a client claiming to have been defrauded by his attorney will not permit the latter

---

3. Rescission of executed contracts, see note in 1 **Ann. Cas.** 516.

to reap the benefit of a hard bargain or take undue advantage of his client.

**Appeal and Error—Decree Canceling Mortgage Reversed and Suit Dismissed Where Evidence Discloses No Fraud.**

7. Where the evidence, in a suit to cancel a mortgage for fraud in its procurement, discloses no fraud, a decree directing cancellation must be reversed and the suit dismissed.

From Lane: D. V. Kuykendall, Judge.

Department 1.

REVERSED.

For appellants there was a brief over the name of *Messrs. Williams & Bean,* with oral arguments by *Mr. John M. Williams* and *Mr. Howard M. Brownell.*

For respondents there was a brief and oral arguments by *Mr. Walter B. Jones* and *Mr. S. M. Calkins.*

RAND, J.—The defendants appealed from a decree canceling a mortgage upon real property given by the plaintiffs, who are husband and wife, to the defendant, Nellie Blanche Brownell, the wife of the defendant, Howard M. Brownell.

The allegations of the complaint are to the effect that the plaintiff, Joseph De Yulio, was arrested and confined in the county jail of Lane County, Oregon, upon a warrant charging him with the crime of rape; that he employed Walter B. Jones, an attorney, to defend him in said criminal action; that while Jones was absent in attendance upon the state legislature, of which he was a member, the defendant Howard M. Brownell, an attorney at law, informed the plaintiffs "that he could get said Joseph De Yulio admitted to bail and stated to plaintiffs that his, the said Howard M. Brownell's, charges and fees would be $150, and that said plaintiff, Joseph De Yulio,

did then and there pay to said Howard M. Brownell the sum of $150"; that subsequent to the payment of $150 Brownell came to the jail with the plaintiff, Josephine De Yulio, and presented a paper to the plaintiffs for them to sign; that neither of them understood "the English language well" or could read writing, and that Josephine De Yulio could neither read nor write English; that Brownell falsely and fraudulently represented to them that it was necessary for them to sign the said paper in order to obtain the release of De Yulio from the county jail, and in order to obtain bail for him; "that in truth and in fact the representations so made by said defendant Howard M. Brownell were false and fraudulent and without consideration as defendants well knew and that they were made for the purpose of defrauding the plaintiffs and that plaintiffs are informed and believe the said instrument signed as aforesaid to be a mortgage, and a copy of said mortgage is hereto attached and made a part hereof and referred to as Exhibit 'A.' That plaintiffs relied upon said false and fraudulent statements and representations and had they known said statements and representations to be false they would not have executed said mortgage or signed said papers;" that plaintiffs do not owe either of the defendants any sum whatsoever; that there was no consideration for the giving of said mortgage; that the transaction was fraudulent and was made for the purpose of knowingly defrauding the plaintiffs; that said mortgage has been placed of record, and that the plaintiffs did not discover the falsity of the representations so made to them until after the return of Jones on February 24, 1921, and that the defendants are not entitled to any sum for Brownell's services. The prayer of the complaint is

that the mortgage be canceled and that the defendants be required to return the $150 paid to the defendant Howard M. Brownell. The mortgage is dated February 9, 1921.

By their answer the defendants admitted the execution of the mortgage but denied all of the other allegations of the complaint and, in substance, they affirmatively alleged that Brownell was employed by De Yulio to defend him upon said charge, and that De Yulio paid him $150 as a retainer and agreed to pay him in all for his services the sum of $1,150, and to give the mortgage in question as security for the payment of the balance of $1,000, and that the mortgage was executed in compliance with said agreement. The reply denies all of the allegations of the answer.

It appears from the testimony that an order had been made directing that De Yulio be admitted to bail upon his giving an undertaking in the sum of $3,000. There is no evidence in the record explanatory of the manner in which De Yulio expected to secure his release upon bail by payment to Brownell of the sum of $150 and by the execution of a mortgage for $1,000, nor is there any evidence of any promises made by Brownell in that behalf, except De Yulio testified that Brownell was to receive in full for all his services said sum of $150. It is neither alleged nor proved that Brownell represented to De Yulio that he had obtained or could obtain an order reducing the amount of bail required to secure De Yulio's release from custody. As it is only reasonable to suppose that De Yulio must have known the amount of the bail required to secure his release, this circumstance alone, while not conclusive, tends strongly to overthrow De Yulio's contention that the consideration

for the giving of the mortgage was to enable him to secure bail and to support the contention of the defendants that the mortgage was executed to secure Brownell in payment of his attorney's fees.

It appears from De Yulio's testimony that he sent his daughter, Mary Combasso, to go to see Brownell and arrange with Brownell to defend him. In a subsequent answer he attempted to qualify this by saying: "To defend me in what I wanted to be done." His daughter, Mary Combasso, testified that pursuant to this request she saw Brownell and had him go to the jail to consult with her father. She testified that the mortgage was not given to secure the payment of a fee, but that it was given to enable her father to obtain bail. However, it appears from the testimony of a member of the grand jury, before whom Mrs. Combasso appeared, that she stated in the presence of the grand jury that Brownell had been employed, and that he had been given a mortgage on the ranch for $1,000 in payment of his fee. This is a clear contradiction of her testimony.

It also appears from the testimony of Forrest Miller, who was present at the time that Mrs. Combasso and her mother, Mrs. De Yulio, arranged for the employment of Brownell, that in response to the inquiry made by Mrs. Combasso of Brownell as to what amount he would charge to defend her father, he stated $1,500, and upon Miller's suggestion reduced the amount to $1,150, agreeing to take a mortgage to secure $1,000 of the amount so charged. His testimony shows that Mrs. Combasso and her mother both agreed to the giving of the mortgage in question to secure the payment of said sum for said purpose. Miller testified that he had been requested by Mrs. Combasso to come to Eugene and assist her in ob-

taining an attorney to represent her father. Mrs. Combasso testified that she requested Miller to come to Eugene, and that when she sought to borrow the money from Miller and offered security for the loan, he stated that he could not loan the money and advised her to give the security to Brownell. After the amount of Brownell's fee had been agreed upon, as testified to by Miller, Mrs. Combasso admits that an instrument was prepared and that Brownell advised her to have her mother and her father sign it, and that she and her mother, with Brownell, went to the jail and that she was present when her father and mother signed the mortgage.

It appears from the testimony of Miss Luella Summers, who is employed by Brownell in his office as a stenographer, that she prepared the note and mortgage and went with Brownell to the jail and was present at the time the same was executed by the plaintiffs. She testified that Mrs. Combasso and Mrs. De Yulio were in the office several hours on the day that the mortgage was executed, and that Miller was there in consultation with them at said time. Miss Summers testified that the mortgage was explained fully by Brownell to Mrs. Combasso and to the plaintiffs before plaintiffs executed it, and Brownell testified that he first told them that he would charge $1,500 and that he reduced this amount to $1,150, and agreed to accept a mortgage to secure the payment of $1,000 of that amount; that after agreeing upon this amount he went to the jail and advised De Yulio of what had been agreed upon and then had the note and mortgage drawn and returned with them to the jail where they were executed, and that the matter was fully explained to De Yulio, Mrs. De Yulio and Mrs. Combasso, and that Mrs. Combasso explained it to

her mother, who does not speak English, as well as to her father.

1. Without setting forth the testimony at greater length, it is only necessary to say that after a careful consideration of the whole evidence, we are convinced that Brownell did not in any way mislead or deceive the plaintiffs as to the consideration for which they were executing the mortgage; that they were fully cognizant of the fact that the mortgage was to be given to him as security for the payment of the fee that they had agreed to pay him for services that he contracted to perform for them, and that with this knowledge upon their part they executed and delivered the mortgage in suit.

It is true that De Yulio is a foreigner and that he speaks English somewhat imperfectly, and that his wife speaks no English at all, and that Mrs. Combasso speaks and understands English very defectively. Yet De Yulio testified that he had lived in this country for some twenty-six years, and his testimony discloses that he understands and speaks the language comparatively well, although he neither reads English, nor writes in English, except, as he says, he can write his signature to a check. Notwithstanding this, it clearly appears to us, from the testimony, that he understood the contract he entered into with Brownell, and that his daughter, Mrs. Combasso, was equally well informed.

2-4. It is elementary law that fraud is never presumed, and that it must be alleged and that the particular fraud must be proved by clear, satisfactory and convincing testimony. The record in this case discloses no such testimony. "The cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which ought not

107 Or.—42

to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear." 6 Cyc. 336. It is equally well settled that the inadequacy of the consideration is not a ground for cancellation of a contract or conveyance "unless the inadequacy is so great as to furnish of itself convincing evidence of fraud." 6 Cyc. 286.

5. In this state attorneys have always been allowed to contract with their clients for the compensation they are to receive for the services they contract to perform. This rule prevails generally throughout the United States, although it was not the rule under the civil law, nor is it the rule in England: 2 Thornton on Attorneys at Law, § 400. Section 561, Or. L., declares that "the measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties," and the law is settled in this state that a contract entered into between an attorney and his client fixing the amount of the compensation of the attorney for services to be performed will be upheld when it appears to be fair and honest: *Bingham* v. *Salene,* 15 Or. 208 (14 Pac. 523, 3 Am. St. Rep. 152); *Hamilton* v. *Holmes,* 48 Or. 453, 459 (87 Pac. 154).

6. It is also well settled in this state that "a court of equity, when properly appealed to by a client who claims to have been defrauded by his attorney, will not permit the latter to reap the benefit of a hard bargain or allow him to take an undue advantage of his client in his dealings with him." *Hamilton* v. *Holmes, supra; Ah Foe* v. *Bennett,* 35 Or. 231 (58 Pac. 508).

7. As the evidence fails to disclose that there was any fraud in the procurement of the mortgage, the decree of the lower court, directing the cancellation

of the mortgage, must be reversed and plaintiffs' suit must be dismissed, and it is so ordered.

                    REVERSED AND SUIT DISMISSED.

BURNETT, BEAN and McCOURT, JJ., concur.