Argued January 8; reversed February 10; rehearing denied
April 21, 1931

## BLAIR *v.* McCOOL
(295 P. 950, 298 P. 244)

*Frank S. Senn* and *Omar C. Spencer,* both of Portland (Omar C. Spencer, Senn & Recken, and Robert R. Rankin, all of Portland, on the brief), for appellant.

*W. O. Sims,* of Portland (Sims & Sims, of Portland, on the brief), for respondent.

CAMPBELL, J. This is an action for damages for personal injuries claimed to have been caused by reason of an assault and battery. Material allegations in the complaint are:

"That on the 9th day of November, 1927, the defendant without first obtaining plaintiff's voluntary consent, wrongfully and unlawfully committed an assault and battery upon plaintiff by administering an anaesthetic and then operating upon and making an incision into the plaintiff's left eye and removing or pretending to remove the crystalline lens thereof, thereby greatly damaging and injuring plaintiff as is hereinafter more particularly set forth and alleged.

"That at the time of the wrongful and unlawful act hereinbefore described plaintiff was of the age of thirty-three years, in good health, and had useful vision in said left eye but the defendant wrongfully and unlawfully and without first obtaining the voluntary consent of the plaintiff, cut into said left eye of the plaintiff and so mutilated the same that plaintiff's vision was totally destroyed as a direct result of the said operation performed without plaintiff's voluntary consent and plaintiff's vision was at the time of the said operation totally destroyed and plaintiff has, as a result thereof, been permanently damaged and injured.

"That at the time of the said wrongful and unlawful act committed by the defendant upon the plaintiff's left eye said plaintiff was blind in his right eye and as a result of the damage and injuries hereinbefore set forth and alleged plaintiff was then rendered wholly blind and ever since the time of the said operation has been totally blind and unable to engage in any gainful occupation. That immediately prior to said wrongful and unlawful operation plaintiff was able to earn and had been earning the sum of $250 per month, and had an expectancy in life of thirty-three years.

"That the said wrongful and unlawful act hereinbefore set forth and described has caused plaintiff much pain, suffering and mental anguish and plaintiff

alleges that he has by reason of said wrongful act of the defendant been permanently injured and damaged in the sum of $100,000.''

He prays judgment for that amount.

The answer of the defendant after admitting that he was a physician and surgeon, denies each and every other allegation of said complaint and the whole thereof, except such allegations and such paragraphs as are herein specifically admitted. For a further answer and defense, alleges:

''That on the 9th day of November, 1927, this defendant, with the consent of plaintiff, after having treated plaintiff for a long period thereto, performed an operation upon plaintiff's left eye; that in performing said operation this defendant used his best judgment and did not perform said operation without the consent of plaintiff.''

To this answer the plaintiff replied, admitting that the defendant had treated plaintiff for a time prior to the operation described in the complaint, but denying each and every other allegation contained in said paragraph and the whole thereof; then for a further and separate reply alleged:

''That prior to the operation described in the complaint the defendant had performed an operation upon plaintiff's right eye and as a result of said operation plaintiff lost all vision in said right eye and immediately after the operation advised the defendant that he believed that the operation had destroyed his sight and that he did not have and never would have useful vision in said eye, but the defendant repeatedly stated to the plaintiff that as a result of the operation upon the said right eye the same was in first-class condition; that the operation had been a success and the vision had not been injured and that the apparent loss of vision was due to the medicine being applied by defendant to plaintiff's right eye in the treatment thereof.

"That at the time the defendant made the said statements to the plaintiff he well knew the same were false and untrue and that the vision in plaintiff's right eye was hopelessly gone and the defendant made the said false and fraudulent statements to the plaintiff for the sole purpose of covering up and concealing the fact that the vision in plaintiff's right eye had been destroyed as the result of the operation performed on plaintiff's right eye by the defendant, and for the further purpose of inducing plaintiff to submit to an operation upon plaintiff's left eye.

"That as a result of the fraud and deceit practiced by the defendant upon the plaintiff relative to the condition of his said right eye, this plaintiff was forced to submit to an operation upon his said left eye, but plaintiff never at any time freely and voluntarily consented to the performance of the said operation upon his left eye, and the same was performed against plaintiff's will and without his voluntary consent."

On these issues the case was tried to a jury. At the close of the testimony of plaintiff's case, defendant moved for a nonsuit, on the following grounds and for the following reasons:

"First. That there is not sufficient evidence of assault and battery or of negligence to permit this case to go to the jury.

"Second. The complaint in this case is predicated upon assault and battery. There is no evidence here that any assault and battery was committed. The most there can be said for the evidence is that while plaintiff may have protested, yet he did consent to this operation, went to the hospital voluntarily, prepared himself for the operation. There is no evidence that he was laboring under any duress or any undue influence; no evidence here that he wasn't in possession of all his mental faculties. He went to the hospital in company with his wife. Both the plaintiff and his wife are people of mature age, with all their faculties, and they fully acquiesced in this operation. And I think there is a total failure here of any assault and battery.

"Third. There is here a total failure of any evidence which would show that the plaintiff suffered any damage as the result of this operation or this alleged assault and battery, and the plaintiff in order to recover in this case, must not only show an assault and battery, but must also show a damage as the result of the assault and battery. The mere nominal damages are not sufficient to entitle a case of this kind to go to the jury. The testimony of medical practitioners is totally lacking in this case as to whether or not this plaintiff if no operation had been performed, whether he would have been any the less for the experience or whether he would have been any the better for it."

The motion was overruled by the court, from which ruling an exception was taken. The defendant then put in his testimony and the plaintiff put on his rebuttal testimony. After all the testimony was submitted, the defendant moved for a directed verdict on practically the same grounds as in his motion for an involuntary nonsuit. This motion was also denied and an exception was taken to the ruling. No exceptions were taken to the instructions of the court, except the failure of the court to give the instructions requested. The jury returned a verdict in the sum of $25,000 for the plaintiff. The defendant seasonably moved for a new trial on the following grounds:

"1st. Excessive damages appearing to have been given under the influence of passion and prejudice;

"2nd. Insufficiency of the evidence to justify the verdict; and said verdict is against the law;

"3rd. Error in law occurring at the trial, and excepted to by the party making this application."

He then sets up as error, the refusal of the court to grant a nonsuit, and his refusal to grant the motion for a directed verdict. He also claims in his bill of exceptions, as error:

144

"That the court erred in instructing the jury that the jury could assess damages for permanent injuries for the reason that there is no competent evidence in this case that the plaintiff suffered any permanent injuries as a result of any acts of Dr. McCool."

The record does not disclose that he took any exception to such an instruction. He then sets up:

"That the court erred in failing and refusing to give defendant's requested instruction to the fact that plaintiff was not entitled to recover for permanent injuries, upon the ground and for the reason that the evidence does not disclose that plaintiff suffered any permanent injuries as a result of any act of Dr. McCool."

The record does not disclose that he ever requested such instructions. The record shows that covering that subject, he requested the following instructions:

"I instruct you as a matter of law that if you should find for the plaintiff, he cannot recover for any permanent injury, as there is no competent *medical* testimony of his having suffered any permanent injury as a result of any claimed or alleged wrongful acts on the part of Dr. McCool." (The italics are ours.)

There is considerable difference between any evidence and any medical evidence.

Does plaintiff's testimony show that the operation was performed without consent? It is conceded that there was no physical force used, nor were there any threats made, to induce plaintiff to undergo the operation. Plaintiff, however, claims that his consent was induced by fraud. In his complaint he is careful to say that he did not voluntarily consent. This simply means that he consented, but that his consent was not voluntary. The so-called new matter set up in the reply is simply an explanation of his lack of voluntary consent, and more properly belongs in the complaint.

The decision of this case must, therefore, depend upon whether his consent was induced by fraud practiced upon him by defendant. When he speaks of fraud it must be taken as meaning such fraud or fraudulent representations as are recognized and defined in law as actionable. There is no conflict in the testimony that he gave his consent. The conflict arises on the way the consent was obtained. The pleadings clearly show that plaintiff is relying solely upon the representation which he claims the defendant made regarding the sight of the right eye.

"To constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with reasonable certainty, and all of them must be found to exist. The absence of any one of them is fatal to recovery." *Wheelright v. Vanderbilt,* 69 Or. 326 (138 P. 857); *Rolfes v. Russel,* 5 Or. 400.

In *Rolfes v. Russel,* supra, this court quoted with approval:

"In *Lord v. Goddard* (13 How. 211) the court, in referring to this class of action, said: 'The gist of the action is fraud in the defendants, and damage to the plaintiff. Fraud means intention to deceive. If there is no such intention; if the party honestly stated his own opinion, *believing* at the time that he stated the *truth,* he is not liable in this form of action, although the representations turned out to be entirely untrue.' The court further stated that this question had been settled in England, since the decision in *Haycraft v. Creasy* (2 East, 92) which was made in 1801."

This is the rule that has been uniformly followed in this state. The plaintiff has no complaint to make regarding the operation. He does not claim that it was unskillfully or negligently done, or that the result would have been different under any other circumstances. Neither is there any claim that the operation was not necessary. His whole complaint is that he would not have had it done at the time it was done if the defendant had not represented to him that the sight of his right eye would be restored.

The case of *Mohr v. Williams,* 95 Minn. 261 (104 N. W. 12, 1 L. R. A. (N. S.) 439, 11 Am. St. Rep. 462, 5 Ann. Cas. 303), was one where plaintiff therein employed a physician to perform an operation on her left ear, but he operated on the right. In *Rolater v. Strain,* 39 Okla. 572 (137 P. 96, 50 L. R. A. (N. S.) 880), a physician was employed to lance a toe and he proceeded further and removed the sesamoid bone. In *Hively v. Higgs,* 120 Or. 592 (253 P. 363, 53 A. L. R. 1052), in which the plaintiff therein claimed that she employed defendant therein to perform an operation on the septum of the nose, and that the doctor without her consent removed her tonsils. These cases are easily distinguishable from the instant case. The above cases present a different question than is involved in the instant case.

■ It is not contended by plaintiff that the operation was not authorized by him, but his contention is that his consent was obtained through fraud, therefore the gist of this action is fraud. Then the question is: Did plaintiff's testimony at the time he first rested his case prove or tend to prove fraud?

"It is elementary law that fraud is never presumed, and that it must be alleged and that the particular fraud must be proved by clear, satisfactory, and convincing testimony": *De Yulio v. Brownell,* 107 Or. 657 (215 P. 576).

■ The only testimony given in plaintiff's case, at the time the motion for a nonsuit was made, was that of himself and his wife. T. of T., page 7, we find his testimony as follows:

"Mr. Sims. Q. Tell as near as you can, Mr. Blair, what was said between you and Dr. McCool just preceding the operation on your left eye.

"Mr. Senn. May I ask him where this conversation was?

"Mr. Sims. Yes he will tell that.

"A. I want the question again please.

"Q. (By Mr. Sims) Tell what conversation you had with Dr. McCool, if any, just preceding the operation on your left eye, and where it took place, and if anybody was present beside you and Dr. McCool.

"A. The conversation took place in Dr. McCool's office. I don't remember just what the date was. But the question of operating on the left eye came up. In fact, the doctor wanted to operate on the left eye. I, of course, objected to the operation on the left eye, being dubious about the right eye. And I was curious like any one else would be, you know, to know just how much longer it would be before my vision would return in the right eye; which I never did find out, in spite of the fact that I asked."

Continuing on page 8, T. of T.:

"Q. What did he say to you about that right eye?

"A. About the right eye, he told me that the right eye, the operation on the right eye was a successful operation, and that there was no use worrying, and only for a little inflammation my vision was all right. And the proper thing to do was to have the left eye operated on while this was waiting on the right eye. And the only reason that I submitted to the operation on the left eye was because I was told that my vision in the right eye was to be ———

"Mr. Sims. What he told you; go ahead.

"A. The only reason I submitted to the operation on the left eye, was because I expected the vision in the right eye, and I was told repeatedly that I would have it. For that reason I submitted, not ———"

The testimony of Mrs. Blair is practically to the same effect.

Where, in this testimony, does it show that the defendant knew that plaintiff would not again receive the vision of the right eye? All he says is that he expected it because he was repeatedly told that he would have it. In his testimony above quoted, T. of T. 7:

"And I was curious like any one else would be, you know, to know just how much longer it would be before my vision would return in the right eye; which I never did find out in spite of the fact that I asked."

This statement does not appear to bear out his contentions that he was assured by the defendant that the vision would return to his right eye; and certainly no deduction of fraud could be made from that statement. Nor could an inference of fraud be drawn from any of his testimony. There is absolutely no testimony that the defendant knew, or even should have known, at the time of the operation on the left eye, that sight would not be restored to the right eye. It cannot be assumed from the mere fact that the vision did not return.

Here was an operation, the one on his right eye, which had been performed the 24th day of April, 1927, and according to his testimony the eye was not improved up until the time that he underwent the operation on the left eye, November 9, 1927. During this time the right eye was not bandaged; he knew that he could not see, or that his vision was impaired; and yet he says that on the promise of the defendant that the

vision would return to the right eye, he submitted to the operation on the left eye. Giving his testimony the most favorable construction it amounts simply to an opinion of what might occur in the future. And if the opinion was honestly given, and there is no evidence that it was not, it falls far short of actionable fraud or false representation.

There is nothing in the evidence submitted on the part of the defendant nor in the evidence given by plaintiff in rebuttal that proves or tends to prove all the necessary elements of actionable fraud. Nowhere is there any testimony which proves or tends to prove that if the defendant did make the statements attributed to him regarding the right eye, that he knew or by the exercise of reasonable skill and prudence could have known that it was false at the time it was made.

The motion for a directed verdict should have been allowed and for these reasons the judgment is reversed and case remanded with directions to set aside the judgment and dismiss the case.

BEAN, C. J., BROWN and BELT, JJ., concur.

---

Rehearing denied April 21, 1931
ON PETITION FOR REHEARING
(298 P. 244)

CAMPBELL, J. A petition for a rehearing has been presented in which eminent counsel strenuously contend that this court was in error in the application of the rules of law to the facts in issues.

■ The gist of the instant action is fraud. We have carefully examined the authorities cited in the petition for a rehearing. None of them are in point nor appli-

cable to the instant case: *Houston and T. C. Ry. Co. v. Brown,* 69 S. W. 651; *Smith v. Great Northern R. R. Co.,* 139 Minn. 343 (166 N. W. 350); *Yeager v. St. Joseph Lead Co.,* 12 S. W. (2d) 520; *International & G. N. Ry. Co. v. Shufford,* 36 Tex. Civ. App. 251 (81 S. W. 1189); *Haigh v. White Way Laundry Co.,* 164 Iowa, 143 (145 N. W. 473, 50 L. R. A. (N. S.) 1091); *Carroll v. United Rys. Co. of St. Louis,* 157 Mo. App. 247 (137 S. W. 303); *Blaha v. Chicago & N. W. Ry. Co.,* 119 Neb. 611 (230 N. W. 453); *A., T. & S. F. Ry. Co. v. Peterson,* 34 Ariz. 292 (271 P. 406); *Jacobson v. Chicago, M. & S. P. Ry. Co.,* 132 Minn. 181 (156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, 355); *Enger v. Great Northern Ry. Co.,* 141 Minn. 86 (169 N. W. 474); *Chicago, R. I. & P. Ry. Co. v. Burke,* 73 Okl. 258 (175 P. 547); *Chicago, R. I. & P. Ry. v. Johnson,* 71 Okl. 118 (175 P. 494), are not actions brought against physicians for fraud or fraudulent representation, but are all actions for personal injury where the injured party executed a release, generally on the advice of a physician in the employ of the party responsible for the injury, and the different courts held in effect that it was proper to submit the question, as to how the release was obtained, to the jury

The general rule is as stated in *Texas Central R. R. Co. v. Neill,* 159 S. W. 1180:

"If representations made to secure a release for liability because of personal injuries, were in fact false, the fact that the person making them believed them to be true would not prevent the injured person from having the release set aside."

*Francis v. Brooks,* 24 Ohio App. 136 (156 N. E. 609), is a case against a dentist for malpractice and not founded on fraud.

The petition for a rehearing is denied.

BEAN, C. J., BROWN and BELT, JJ., concur.