Argued September 10, decided September 23, 1913.

## COOLIDGE *v.* OBERLIN.

(135 Pac. 167.)

**Fraudulent Conveyance—Suits to Set Aside—Sufficiency of Evidence.**

1. In a suit to set aside a quitclaim deed by a husband to a wife of land owned by them as tenants by the entirety, and a transfer of the personal property thereon, in consideration of her release of the husband from the payment of any part of an amount said to be due her, and her promise to pay her nephew a sum said to be due him, on the ground that they were made to defraud creditors, evidence *held* to show that the husband was indebted to the wife and her nephew in the amounts claimed.

**Fraudulent Conveyances—Conveyances to Wife in Payment of Indebtedness.**

2. Where a wife, who had money derived from the sale of property formerly owned by her, let her husband use it, without any promise on his part to repay it, but did not give it to him, or participate in his undertakings in which he used the money, he was indebted to her, and a conveyance of land in settlement of such indebtedness was not fraudulent as against creditors.

[As to fraudulent conveyances between husband and wife, see note in 90 Am. St. Rep. 497.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is a suit by Coolidge & McClain against Charles Oberlin, Nellie Oberlin, Henry De Vol and Ladd & Bush, a corporation, to have deeds to real property de-

creed to have been executed with intent to hinder and defraud a creditor, and to subject to the payment of a demand a sum of money deposited in a bank.

The admitted facts are that a farm of 72¼ acres in Marion County, Oregon, was conveyed September 14, 1903, to the defendants Charles Oberlin and Nellie, his wife, the consideration being $2,600, of which $1,000 was then paid, and the remainder of the purchase price was secured by a mortgage of the premises. Oberlin borrowed from the plaintiff, a corporation engaged in banking, various sums of money amounting on March 23, 1908, to $4,404, for which sum he gave it his promissory note payable in one year, taking up all his other notes then held by that bank. Oberlin and his wife and her nephew, the defendant Henry De Vol, on August 25, 1908, subscribed their names to a writing, wherein it was stated that upon an accounting it was found that Oberlin was indebted to her in the following sums, all of which bore 6 per cent interest, to wit, $1,000 for five years, amounting to $1,300, $700 for the same time, $910, $1,300 for three years, $1,534, and $200 for five years, $290, aggregating $4,034; that Oberlin was indebted to De Vol for labor performed at $30 per month from April 1, 1905, to August 1st of that year, amounting to $120; from January 1, 1906, to November 1, 1907, $660, from April 1, 1908, to August 20th of that year, $140, aggregating $920, and, inasmuch as no interest had been paid him on these sums, he was entitled to $1,000; and that, in consideration of her agreement to release her husband from the payment of any part of the amount so found to be due her, and of her promise to pay De Vol the sum so ascertained to be due him, Oberlin, for the expressed sum of $1, executed a quitclaim deed of all his interest in the farm, and also transferred to her all his stock, implements, etc., then on the premises. Oberlin and

his wife on August 26, 1908, made and delivered a deed of the farm to J. L. Combs and his wife, who in exchange therefor executed a deed to lots 7 and 8 in block 8, North Salem, conveying an undivided five-sixths thereof to Mrs. Oberlin, and the remaining interest in the premises to De Vol. There was established on the Salem real property at the time Mrs. Oberlin and De Vol secured the title thereto a steam laundry, which for two years and eight months the vendees continued to operate, Oberlin being employed by them.

Oberlin and his wife and De Vol on April 28, 1911, sold and conveyed these lots, subject to a mortgage thereon for $4,772 in cash, which sum was deposited to her credit in the bank of the defendant Ladd & Bush at Salem.

The plaintiff commenced an action in the Circuit Court of Marion County May 1, 1911, against Oberlin to recover the amount of his promissory note, and, having caused a summons to be issued and given an undertaking for an attachment, a writ thereof was issued, pursuant to which a notice of garnishment was served on the defendant Ladd & Bush, the agent of which in answer thereto certified that the bank held the sum of money so deposited as that of Mrs. Oberlin, but it had no money or property belonging to her husband. This suit was instituted May 9, 1911, to have it decreed that Oberlin had been the owner of the farm; that the conveyance of his interest therein to his wife was fraudulent as to plaintiff; that he had been the equitable owner of the lots in North Salem, and was the owner of the money so deposited. A judgment was rendered in the action May 15, 1911, for the sum demanded. Thereupon, a supplemental complaint herein was filed setting up such recovery. The case, being at issue, was tried, resulting in a decree as prayed for by the plaintiff, and the defendants appeal.

REVERSED.

For appellants there was a brief over the names of *Mr. John H. McNary* and *Mr. Charles L. McNary,* with an oral argument by *Mr. John H. McNary.*

For respondent there was a brief over the names of *Mr. George G. Bingham* and *Mr. Louis J. Adams,* with an oral argument by *Mr. Bingham.*

Mr. Justice Moore delivered the opinion of the court.

1. The evidence discloses that prior to the purchase of the farm in Marion County, Oregon, Oberlin and his wife had resided about ten years in Deuel County, Nebraska, where she owned an irrigated farm of 160 acres, and title to which was secured by purchase, and an equal area of land, which was her mother's homestead, title thereto being obtained by devise. Eighty acres of the latter tract Mrs. Oberlin sold March 30, 1903, for $100. She sold the irrigated land July 25, 1903, for $2,200, receiving $1,000 cash and taking a mortgage on the premises as security for $1,200. The remainder of the pasture land she sold August 7, 1903, for $100. No cash was received upon the sales of land devised to her. Mrs. Oberlin had also owned livestock and other personal property, which in 1903 she sold for $700. Her husband had owned in that state a homestead, which he sold in 1898 for $500. Thereafter he owned no other land in Nebraska, and was engaged in cultivating his wife's farm and other leased lands. He was, however, the owner of horses and other personal property, which in 1903 he sold for $500.

Having thus disposed of their property in Nebraska, Oberlin and his wife came to Oregon in August, 1903, and soon thereafter purchased the farm in Marion County, taking the title in their names as tenants by the entirety. In order to secure the money necessary

to make the first payment of $1,000 on the purchase, Oberlin presented to the plaintiff bank two Nebraska checks drawn in his favor, and received in cash $1,490.66, the amount thereof. He also had credit in the plaintiff's bank for other Nebraska checks issued to him as follows: October 23, 1903, $429.50; November 7, 1903, $134; January 26, 1904, $125.40; November 7, 1904, $95.50; and October 21, 1905, $1,314.55.

Mrs. Oberlin testified that her husband had no interest whatever in the irrigated farm, pasture land or personal property which she owned in Nebraska; that after a sale of her lands, goods and chattels in that state checks were secured to facilitate the transportation to Oregon of the greater part of her money; that when the farm in Marion County was purchased she and her husband agreed that, since they had no children, the deed should be executed to them as husband and wife, so that the survivor might take title to the premises upon the death of the other; that Mr. Oberlin then promised to repay her the sum of $1,000, which she advanced on account of the purchase of the land; that all the other sums received from Nebraska and deposited in the bank to the credit of her husband were her money, a statement of which amounts, with interest thereon for the time retained, is set forth in their account, amounting to $4,034; that she let him have the money, but did not know how he expended it; and that his interest in the land was conveyed to her "because," as she testified, "I wanted my money to do something; that he had had it just as long as I could stand it."

Martin Adams, the cashier of the bank, testified that after the bargain for the purchase of the Marion County land was concluded he was informed by Oberlin that as soon as a deed to the premises could be executed he would be the owner of the farm; that at different

times from that year, 1904, until that of 1907, the witness having loaned various sums of money to Oberlin, to enable him properly to cultivate and harvest hops, the latter, referring thereto, said to Adams, "These buildings and improvements cost me more than I expected by a good deal," further saying, "Of course I own the place, and will give you a mortgage, if you want it." In response to the offer, the witness replied: "No, if you can get a good price for your hops, you can liquidate that. I didn't take any mortgage. He told me he had a farm back in Nebraska, all river bottom land. On that land they raised corn and alfalfa, and fed hogs. His income was from $1,000 to $1,500 up to $2,000 a year, owing to the price of hogs. As a matter of fact, of course, on the strength of that, I never demanded a mortgage. I took the man to be absolutely honest." Adams further testified that on May 15, 1905, Mrs. Oberlin drew a sight draft on a party in Nebraska for $77.35, directing that sum to be credited to her husband's account, saying it was in the family.

Certified copies of the deeds executed by Mrs. Oberlin and her husband of the irrigated farm and pasture lands were offered in evidence at the trial and also of the deed conveying the irrigated land to her, the expressed consideration therefor being $1,000. The copy of the deed of the irrigated farm executed by Mrs. Oberlin and her husband recites a consideration of "twenty-two no/100 dollars"—evidently the word "hundred" having been omitted. Mrs. Oberlin and her husband severally stated upon oath that $2,200 was the consideration paid for that land. We think the evidence is sufficient in this respect, for it is hardly to be supposed that land for which $1,000 was originally paid would be sold for only $22.

2. A careful examination of all the testimony given at the trial convinces us that Mrs. Oberlin was the owner of the Nebraska lands referred to, in which her husband had only an inchoate interest; that the sum of $1,000, which was the only money paid by him or her on account of the purchase of the Marion County land, belonged to her; that after the purchase of that farm most of the money, evidenced by Nebraska checks or drafts, which was deposited in plaintiff's bank to the credit of Oberlin belonged to his wife; that while the testimony does not show a promise on his part to repay her any sum, except the $1,000 first received, it does not appear from the evidence that she gave him the money which he thus received, or that she participated in any manner in his undertakings to improve the farm, or to cultivate or harvest hops; that her statement to the cashier of plaintiff's bank, which she denies, that the money so deposited "was all in the family," evidences only a loan to her husband; and that Oberlin was indebted to his wife in the sums stated in their written account, and also indebted to De Vol in the sum thus admitted. De Vol had been a member of their family about 17 years, having made his home with them since he was about 14, and, this being so, it is not strange that his wages were allowed to accumulate.

We believe that Mrs. Oberlin's claim against her husband was *bona fide;* that he had a right to favor her and her nephew as creditors; and that the transaction between them should be upheld.

It follows that the decree should be reversed and the suit dismissed, and it is so ordered.

REVERSED: SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.