Argued April 16, modified May 19, 1914.

## LANE *v.* MYERS.

(141 Pac. 1022.)

**Trusts—Constructive Trusts—Purchasing Property With Money of Another.**

1. Under Article XV, Section 5, of the Constitution, providing that the property and pecuniary rights of every married woman at the time of marriage or afterward acquired by gift, devise or inheritance shall not be subject to the debts or contracts of the husband, and Sections 7034, 7036, 7038, and 7044, L. O. L., placing husband and wife on the same footing as other persons in respect to their right to contract, the principle that where one using the money of another purchases real property, taking title in his own name instead of that of the owner of the money, without the owner's consent, a trust is raised in favor of the owner of the money, applies as between husband and wife.

> [As to resulting trusts, what they are and when created, see note in 51 Am. Dec. 751.]

**Estoppel—Equitable Estoppel—Necessity for Pleading.**

2. An estoppel of a wife from asserting that land conveyed to her by her husband had been purchased with her funds cannot be set up by a creditor of the husband without having been pleaded.

> [As to necessity for and mode of pleading estoppel, see note in 27 Am. St. Rep. 344.]

Fraudulent Conveyances—Transactions Between Husband and Wife—
　　Estoppel.

　3.　A wife is not estopped to assert that land conveyed to her by
her husband was purchased with her money by representations of the
husband to intended creditors that he owned the property, in the
absence of a showing that she had reason to know of his representa-
tions or that she did any act inducing the creditors to extend credit.

　　　[As to fraudulent conveyances considered in connection with
　　　transfers between husband and wife, see notes in 19 Am. St. Rep.
　　　657; 20 Am. St. Rep. 715; 90 Am. St. Rep. 497.]

Fraudulent Conveyances—Remedies of Creditors—Issues and Proof.

　4.　In a suit to set aside a conveyance by a debtor to his wife,
where the answer alleged that the property had been purchased with
money belonging to the wife, the fact that it did not formally deny
the allegation that prior to the deed the husband was the owner in
fee of the land does not require a decree setting aside the conveyance,
since the answer sets up in substance that, while the husband was
the legal owner, the wife was the real owner.

From Jackson: FRANK M. CALKINS, Judge.

Department 1.　Statement by MR. JUSTICE BURNETT.

Alleging that a deed of date September 30, 1911,
from defendant W. G. Myers to his wife, Lula A.
Myers, for certain lands, was made without any con-
sideration whatever, and with the intent on the part
of the grantor, in which the grantee knowingly partici-
pated, to defraud the creditors of the former, the plain-
tiff, B. G. Lane, as trustee in bankruptcy of W. G.
Myers, a bankrupt, brings this suit in behalf of the
grantor's creditors, asking to have the deed canceled
and the property subjected to the demands of the
bankrupt's estate.　To prevent the registry of any
other conveyance the county recorder of Jackson
County was made a party, but made no defense.

All the allegations of the complaint tending to im-
pute fraud to the answering defendants were denied
by them.　Conceding that the title was taken in the
husband's name, they further allege substantially that
the lands mentioned in the deed in question, except lot
3, in block 17, in Gold Hill, Jackson County, Oregon,
were purchased and paid for with money amounting

to $3,500, which the wife received as a gift from her mother, and in which the husband had no interest, and that at all times the defendant wife was the owner of the premises and entitled to the same except said lot 3. They further aver that at her request and that of her sister, and on account of the land having been paid for with the money of the wife, the husband executed the conveyance mentioned without any intent to defraud his creditors.

The reply denies all the allegations of the answer except that the husband was the owner of lot 3 already mentioned; but contains no new matter. From a decree substantially in accordance with the prayer of the complaint, the defending husband and wife appeal.

　　　　　　　　　　　　　　　　　　Modified.

For appellants there was a brief over the name of *Messrs. De Armond & De Armond,* with an oral argument by *Mr. Hugh L. De Armond.*

For respondent there was a brief over the names of *Mr. Clarence L. Reames* and *Mr. Alfred E. Reames,* with an oral argument by *Mr. Clarence L. Reames.*

Mr. Justice Burnett delivered the opinion of the court.

The relationship of the defendant parties affecting the issues in this case is defined by the following excerpts from our laws:

"The property and pecuniary rights of every married woman, at the time of marriage, or afterward acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of the husband; and laws shall be passed providing for the registration of the wife's separate property": Const. of Oregon, Article XV, Section 5.

"When property is owned by either husband or wife, the other has no interest therein which can be the sub-

ject of contract between them, or such interest as will make the same liable for the contracts or liabilities of either the husband or wife who is not the owner of the property, except as provided in this act'': Section 7034, L. O. L.

''A conveyance, transfer, or lien executed by either husband or wife to or in favor of the other shall be valid to the same extent as between other persons'': Section 7036, L. O. L.

''Neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage, and except as herein otherwise declared they are not liable for the separate debts of each other, nor is the rent or income of such property liable for the separate debts of the other'': Section 7038, L. O. L.

''The property and pecuniary rights of every married woman at the time of her marriage or afterwards acquired shall not be subject to the debts or contracts of her husband, and she may manage, sell, convey, or devise the same by will to the same extent and in the same manner that her husband can, property belonging to him'': Section 7044, L. O. L.

These extracts embody the principle that no liability can attach to or disability be imposed upon a woman merely because she is the wife of some man. They emancipate her from the rigor of the common law which regarded a man and wife as one person, and he that one. The result is that so far as contracts between them are concerned they may be executed and carried into effect in like manner as between other persons not so related: *Stickney* v. *Stickney,* 131 U. S. 227 (33 L. Ed. 136, 9 Sup. Ct. Rep. 677); *Garner* v. *Second Nat. Bk.,* 151 U. S. 420 (38 L. Ed. 218, 14 Sup. Ct. Rep. 390); *Adoue* v. *Spencer,* 62 N. J. Eq. 782 (49 Atl. 10, 90 Am. St. Rep. 484, 56 L. R. A. 817, and note on page 820).

1. It is admitted and the conveyances introduced in evidence show that the husband took the title to the property in dispute in his own name, and, about a year

before the filing of the petition in bankruptcy, conveyed it to his wife. In respect to the date thereof the transfer is not within the limit prescribed by Section 67 of the National Bankruptcy Law (Act July 1, 1898, Chap. 541, 30 Stat. 564 [U. S. Comp. Stats. 1901, p. 3449]), making alienations of property void when made by a bankrupt within four months next prior to filing the petition. In the testimony the sole effort of the plaintiff is to show that, in property statements made by the husband to those of whom he sought credit in connection with his business as a dealer in agricultural instruments, he stated that he was the owner of the real property in dispute. There is no testimony whatever tending to show that the wife knew of these representations or did any act whatever that would lead the creditors, whom the trustee represents, to take any action to their disadvantage. By her own testimony, as well as by that of her husband and of her sister, all of which is undisputed in any way whatever, she shows that in 1896 her mother gave to her and each of her two sisters the sum of $3,500, and later, in 1911, she inherited from her mother the additional amount of $725. It is without dispute in the testimony that it was the wife's money which was paid for the realty in question, except lot 3 already mentioned. There is no evidence whatever in any way controverting this fact. It is well settled that where one using the money of another purchases real property, taking title in his own name instead of that of the owner of the money, without consent of the latter, a trust is raised in favor of the one owning the money, so that, while the bare legal title is in the grantee named in the conveyance, yet the equitable estate is in the one who furnished the money. This doctrine was established as between husbank and wife in the early case of *Springer* v. *Young*, 14 Or. 260 (12 Pac. 400). The principle is also recog-

nized in *Barger* v. *Barger,* 30 Or. 268 (47 Pac. 702);
*Oregon Lbr. Co.* v. *Jones,* 36 Or. 80 (58 Pac. 769);
*Schwartz* v. *Gerhardt,* 44 Or. 425 (75 Pac. 698). In
*Springer* v. *Young* the rule was applied to a trans-
action occurring long before the enactment of the stat-
utes already quoted. Since these laws have placed
husband and wife on the same footing as other per-
sons in respect to their right to contract, the maxim
applies all the more strongly to a transaction like the
one under consideration.

Buying the land with the wife's money and taking
title in his own name created an obligation of trust in-
cumbent upon the husband which was equally as sacred
as any he could incur with his creditors. The only dis-
tinction attaching to such cases is that, on account of
the marriage relation being one of peculiar confidence
and intimacy, courts will strictly scrutinize the testi-
mony affecting a transaction between husband and wife
and require its validity to be clearly proven. These
conditions are met by the testimony in the case at bar.
As pointed out above, the only showing as to the source
of the funds invested in the property is that it was the
wife's money which bought the land, and we are not
at liberty to disregard the same arbitrarily. In real
truth, then, the wife was the equitable owner of the
land at and prior to the time the husband executed the
conveyance. It is thoroughly established by the prece-
dents that a debtor may satisfy the claims of one cred-
itor although he is thereby rendered unable to fully
satisfy the demands of other creditors. By a parity of
reasoning the husband in this case had a right to ful-
fill his trust obligation to his wife by conveying to her
what was in very truth already her own. She is en-
titled, therefore, to the benefit of that transaction un-
less some conduct of hers estops her from alleging
what was indeed the truth.

2. There are two reasons why estoppel of the wife cannot be worked out in this case. The first is that an opportunity was offered to the plaintiff in his reply to respond to the answer in substance that, notwithstanding the affirmative matter in the answer might be true, yet the conduct of the wife was such as to lead the creditors into a disadvantageous position by relying upon her conduct, and so her mouth was closed to speak even the truth in her defense; yet no estoppel is pleaded. Because estoppels suppress the real truth, they are odious, and they who would rely upon them must strictly plead them.

3. A second reason rests upon the fact that there is a total absence of testimony to show that the wife knew or had any reason to know that her husband was representing to his intended creditors that he owned the property in question, or that she did any act whatever inducing them to extend credit in the premises. On the contrary, both she and her husband declare that she was unskilled in business and knew nothing whatever of the conduct of his affairs or of his statements to his creditors. By the express provisions of Section 7401, L. O. L., the laws of Oregon relating to fraudulent conveyances do not operate "in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor." It is not shown that she even knew that he owed a dollar. The plaintiff does not do equity while he seeks it in that he does not ask for an accounting or allow the wife to retain the money which she invested, but he is endeavoring to utterly set aside the conveyance and subject the whole property to the claims of the creditors. It is a case of a wife unlearned in the ways of business trusting one whom above all

others she had a right to trust, and in the absence of any inequitable conduct on her part she is entitled to be protected by a court of chancery. Under the circumstances, it would be unjust to take her all to pay a portion of creditors' claims.

In brief, the marriage relation does not differentiate the parties from any other persons similarly situated, except that the court will carefully scrutinize the evidence relating to the transaction. In the absence of any contradictory testimony, the court is not at liberty to disregard the plain and circumstantial narration of the origin of the funds invested in the property. And, finally, there being nothing in the conduct of the wife to amount to an estoppel, she is entitled to the aid of a court of equity in protecting her actual rights, especially since no estoppel has been pleaded against her. The case is governed by the principles laid down by this court in the following cases: *Coolidge* v. *Oberlin,* 66 Or. 563 (135 Pac. 167) ; *Gladstone Lbr. Co.* v. *Kelly,* 64 Or. 163 (129 Pac. 763) ; *Ball* v. *Danton,* 64 Or. 184 (129 Pac. 1032) ; *Coffey* v. *Scott,* 66 Or. 465 (135 Pac. 88).

4. It was argued that, because the defendants did not formally deny the allegation that prior to the date of the deed the husband was the owner in fee of the land, they must suffer a decree against them. Equity, however, regards the substance and not the form, and, from a consideration of all the pleadings, it is plain that the contention is that, while the husband had a paper title to the naked fee, yet the wife was the real owner thereof.

The conclusion is that the decree of the Circuit Court is modified so that the bill shall be dismissed as to all the property except lot 3, in block 17, in the town of Gold Hill, Jackson County, Oregon, which the plead-

ings admit really belonged to the husband, and which must be subjected to the payment of his debts.

MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.