Submitted on briefs July 13, affirmed August 1, 1916.

# SABIN *v.* KYNISTON.*

(159 Pac. 69.)

**Fraudulent Conveyances—Evidence—Sufficiency—Fraud—Circumstantial Evidence.**

1. In action to set aside a conveyance as fraudulent, it is not essentially requisite that there be direct proof of fraud, but the necessary deceit may be proven by circumstantial evidence.

**Fraudulent Conveyances—Evidence—Burden of Proof—Fraud.**

2. In such action, one alleging fraud or any other material matter must prove it.

**Fraudulent Conveyances—Transaction Invalid—Knowledge of Grantee.**

3. The title of a purchaser is protected from attack as based on fraudulent conveyance where, without knowledge or notice of vendor's intent or of fraud, he has paid a valuable consideration, under Sections 7397, 7400, 7401, L. O. L., providing that every conveyance of any estate or interest in land made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits or demands as against the person so hindered, delayed or defrauded shall be void; that the question of fraudulent intent shall be deemed one of fact, not of law; and that the statute shall not affect the title of purchaser for valuable consideration unless it appears he had previous notice of the fraudulent intent of his immediate grantor of the fraud, rendering such grantor's title void.

**Fraudulent Conveyances—Burden of Proof—Knowledge by Purchaser of Fraudulent Intent of Grantor.**

4. Under Section 7401, L. O. L., providing that the statute as to fraudulent conveyances shall not impair title of purchaser for valuable consideration unless it shall appear that he had previous notice of the fraudulent intent of his immediate grantor, one of the essentials which the plaintiff, in suit to set aside a conveyance as fraudulent, must establish is that the purchaser had previous notice of the fraudulent intent of his grantor.

**Judgment—Lien—Docketing Judgment of Federal Court—Constructive Notice.**

5. Where judgment of the United States court was not docketed in the county where land was situated until long after conveyance from judgment debtor to purchaser, there was no imputed notice to the purchaser of the determination of the cause in the United States court, under Sections 210–212, L. O. L., providing that United States court judgments shall be a lien from the time of docketing a transcript in any county, etc.

*As to effect of participation by purchaser in fraud of vendor which will invalidate transfer for good consideration as against the vendor's creditors, see comprehensive note in 32 L. R. A. 33. REPORTER.

Fraudulent Conveyances—Evidence—Sufficiency—Notice to Grantee.

6. In suit to set aside a conveyance as fraudulent, evidence that there was a rumor current among farmers, in the neighborhood where land was situated, that grantor had been sued, the grantee living several miles distant, and no knowledge of this rumor being imputed to him, was not sufficient to show grantee's knowledge of fraud.

Fraudulent Conveyances—Bona Fide Purchaser—Actual Notice.

7. Actual notice of fraudulent intent by vendor must be shown to avoid a sale to a purchaser paying a valuable consideration.

[As to knowledge of vendee as affecting validity of conveyance alleged to have been fraudulent, see note in 34 Am. St. Rep. 395.]

Fraudulent Conveyances—Evidence—Knowledge of Grantee—Circumstantial Evidence.

8. Actual notice to grantee of fraudulent intent by vendor may be proven by circumstantial evidence.

Evidence—Conclusiveness on Party Introducing Witness.

9. Where a party calls a witness, he thereby represents him to be worthy of credit, or at least not so infamous as to be wholly unworthy of it.

Fraudulent Conveyances—Evidence—Sufficiency—Payment of Valuable Consideration.

10. In action to avoid a conveyance as fraudulent, testimony of grantee, called as plaintiff's witness, of payment of valuable consideration, and testimony of his son as to remittances to such grantee for use in buying the land, held sufficient to show payment by grantee of valuable consideration.

From Wasco: WILLIAM L. BRADSHAW, Judge.

In Banc.    Statement by MR. JUSTICE BURNETT.

This is a suit by R. L. Sabin, trustee in bankruptcy of the estate of A. L. Kyniston, against T. E. Kyniston and H. A. Patton.

In substance, the complaint in this suit is that on May 12, 1914, in the United States District Court for the District of Oregon, the plaintiff recovered a judgment against the defendant Kyniston for $1,760, with interest and costs upon which on the 22d of that month an execution was issued and returned unsatisfied before the commencement of this suit; that on May 18, 1914, Kyniston, for the purpose of defrauding the plaintiff and preventing him from collecting the judg-

ment, conveyed to Patton a tract of land in Wasco County not then nor ever exempt from execution; that the latter knew of the judgment and received the conveyance with the same intent and purpose imputed to his grantor; that there was no consideration for the transfer, the $1 mentioned in the deed referred to being merely nominal; and, finally, that after making the conveyance Kyniston had no property which the plaintiff could find or out of which he could satisfy his adjudicated claim. Except the allegation of the actual transfer of the land, all the averments of the complaint are traversed by the answers, which pleadings state in substance that Patton bought the realty in question in good faith paying one thousand dollars therefor, assuming a mortgage of one thousand dollars then on the property with accrued interest, and promising to pay the balance of taxes then due, all without any knowledge or notice or reason to believe that Kyniston owed anything to the plaintiff or desired to dispose of his property to defraud any creditor.

The separate answers of both defendants were substantially the same. The replies controverted the pleadings of the defendants in material particulars. From a decree dismissing the suit, the plaintiff appealed.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellant there was a brief submitted by *Mr. Sidney Teiser.*

For respondents there was a brief presented by *Mr. Frank G. Dick.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1–3. It is well settled that it is not essentially requisite that there be direct proof of fraud. Indeed, this is generally impracticable, and the deceit necessary to impeach a conveyance may be proven by circumstantial evidence: *Elfelt* v. *Hinch,* 5 Or. 255; *Williamson* v. *North Pac. Lbr. Co.,* 42 Or. 153 (70 Pac. 387, 532); *Kabat* v. *Moore,* 48 Or. 191 (85 Pac. 506); *Phipps* v. *Willis,* 53 Or. 190 (96 Pac. 866, 99 Pac. 935, 18 Ann. Cas. 119). On the other hand, it is a legal platitude to say that he who alleges fraud or any other material matter which is denied must prove the same according to his averment. It has been established by precedents in this state that three things concurring will protect the title of the purchaser: (1) He must buy without knowledge of the bad intent on the part of the vendor; (2) he must be a purchaser for a valuable consideration; and (3) he must have paid the purchase money before he had notice of the fraud. It is provided by Section 7397, L. O. L., that every conveyance of any estate or interest in lands made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits or demands as against the person so hindered, delayed or defrauded shall be void. The effect of this is limited by two sections reading thus:

Section 7400: "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law."

Section 7401: "The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

4–8. Under the latter, one of the essentials which the plaintiff must establish is that the purchaser had previous notice of the fraudulent intent of his grantor. On this point, it is conceded that the judgment of the United States court was not docketed in Wasco County, where the land was situated, until long after the conveyance from Kyniston to Patton. Sections 210, 211 and 212, L. O. L., cover this subject permitting such docketing, and prescribing that from the date thereof the judgment shall be a lien upon the real property of the defendant within the county where the same is docketed. For want of compliance with this section there was no imputed notice to Patton of the determination of the cause in the United States court. There is utterly no evidence to show that he had any knowledge that Kyniston was indebted or obligated in any manner whatever to the plaintiff. There is some slight testimony that there was a rumor current among the farmers in the neighborhood where the property was situated to the effect that Kyniston had been sued, but at the time Patton resided in The Dalles several miles distant, and no knowledge even of this rumor is imputed to him by any witness. In *Coolidge* v. *Heneky,* 11 Or. 327 (8 Pac. 281), it was decided that notice of the fraudulent intent of a grantor in cases of this sort must be actual. It is true enough that this may be proven by circumstantial evidence, but there are no circumstances disclosed by the witnesses tending to charge Patton with the necessary knowledge of the deceit, if any, practiced by his codefendant.

9, 10. We pass to the inquiry of whether Patton paid a valuable consideration for the land. To establish his case the plaintiff called as his first witness the defendant Patton himself, thus representing him to be worthy of credit, or at least not so infamous as to be

wholly unworthy of it: *State* v. *Steeves,* 29 Or. 85, 103 (43 Pac. 947); Greenleaf states it thus:

"When a party offers a witness in proof of his cause, he thereby in general represents him as worthy of belief": 1 Greenl. Ev. (16 ed.), § 442.

The testimony of Patton is to the effect that on Sunday, May 17th, Kyniston visited him and offered the land for sale subject to a mortgage for one thousand dollars in favor of the state land board with accrued interest, pricing it at the sum of one thousand dollars additional, and the balance of unpaid taxes amounting to $26.31; and that he accepted the offer. He said he had in his possession six hundred dollars belonging to his son which the latter had earned from time to time and left in his keeping, together with ninety dollars of his own, all of which he kept in a can buried sometimes in a cellar and sometimes in a woodshed at the various places where he had lived in Wasco County; that he paid this amount to Kyniston on the Sunday mentioned, taking his receipt for the same which, at the time he testified, had been lost and could not be produced; that the following morning he went to the office of an attorney where the deed was prepared and signed by Kyniston; that he then paid him $210. The remainder of the consideration was one hundred dollars which he had previously loaned to Kyniston, making a total of one thousand dollars.

An attempt was made to discredit his testimony by showing that when he was working for a farmer, plowing a 92-acre tract for $1.50 an acre, he drew his money substantially as fast as he earned it; that once he owed his landlord $6 for a month's house rent and paid it by cutting wood, that in another instance he was compelled to ask credit for $16.81 to buy feed for his team while he was cultivating rented land; and,

finally, that shortly prior to the transaction in question he borrowed one hundred dollars and gave a chattel mortgage on his team to secure its payment. These matters are satisfactorily explained by Patton's statement to the effect that at the time he was plowing he did not have ready cash and was compelled to use the money from time to time; that he did not have available funds when he owed the house rent, and, not having any work on hand, made the turn by cutting wood; and, lastly, that his wife was afflicted with cancer and he had borrowed one hundred dollars for the purpose of sending her to California for treatment, which plan she abandoned. The son testified that for practically four years he had been earning money which, from time to time, he gave to his father for safekeeping, and that it was with his consent that his parent used the money to make the initial payment to Kyniston. The latter testified to receiving the money as stated by Patton; and, finally, the scrivener, who prepared the deed and took the acknowledgment, declared that at that time he saw quite a sum of money in gold, estimated by him to be two hundred dollars or three hundred dollars, pass from Patton to Kyniston as part of the transaction.

Some unimportant discrepancies between the testimony of Patton and of Kyniston are pointed out as discrediting their statements. For instance, the former said that the subject of the transfer of the land had not been broached between them until the stated Sunday, while the latter declared that he had several times before then interviewed Patton on the subject. This circumstance, together with the fact that the greater part of the purchase money was paid before the execution of the deed, that no abstract was required or examination of the title made, and that for

a long period of time the money was kept buried in a
can about the house instead of being deposited in a
bank, gives an apocryphal flavor to the stories of the
witnesses.    On the other hand, there is nothing what-
ever to dispute them.    The plaintiff has vouched for
the credibility of Patton and, while the transaction
may not have been carried on by a farm laborer, as
Patton was disclosed to be, with the same precaution
that would characterize a similar affair conducted by
well-trained business men, the testimony clearly pre-
ponderates in favor of the defendants.    The case is
governed by such precedents as *Phipps* v. *Willis,* 53
Or. 190 (96 Pac. 866, 99 Pac. 935, 18 Ann. Cas. 119);
*Ball* v. *Danton,* 64 Or. 184 (129 Pac. 1032); *Coffey* v.
*Scott,* 66 Or. 465 (135 Pac. 88); *Coolidge* v. *Oberlin,*
66 Or. 563 (135 Pac. 167); *Lane* v. *Myers,* 70 Or. 376
(141 Pac. 1022, Ann. Cas. 1915D, 649).

In brief, there is nothing to show that Patton had
any notice whatever that Kyniston intended to de-
fraud anyone.    It is established at least by the greater
weight of testimony that he paid a valuable considera-
tion for the land and that, too, before he had any notice
either actual or imputed of any possible fraud on the
part of his codefendant.    The criticisms of the state-
ments of the witnesses are not sufficient entirely to
discredit them, especially where the veracity of the
defendant Patton was indorsed by the plaintiff when
he called him as a witness.    We deem it unnecessary
to consider the question urged by the defendants to
the effect that without an allegation in the body of the
complaint stating his appointment as trustee, words
of that kind in the title are mere *descriptio personae,*
so that the plaintiff is suing in his private capacity
while the proof shows he is entitled to recover, if at
all, only in the character of a representative.

The decree of the Circuit Court was right, and must be affirmed.      ·      · · AFFIRMED.

MR. JUSTICE EAKIN took no part in the consideration of this case.