Submitted on briefs, reversed and dismissed September 25, 1923.

## HOPE, TRUSTEE, v. STONER ET AL.

### (218 Pac. 555.)

**Evidence—Party Calling Witness Vouches for His Credibility.**

1. A party calling a witness vouches for his credibility, and must take the consequences of a fair construction of his testimony.

**Trusts—Where Wife Furnished Money, but Title Taken in Husband's Name, He Becomes Trustee.**

2. Where the wife furnished money for the purchase of land, and the title was taken in the name of the husband, the husband is the trustee for the benefit of the wife.

**Evidence—Party Need not Testify Regarding Matters Proved by Opponent.**

3. Where, in a suit to set aside a conveyance from husband to wife, plaintiff's testimony proves the actual good faith of the transaction, the wife is not required to testify as to the origin of the property, so long as the testimony in the record, regardless of who produced it, shows such good faith.

From Clatsop: J. A. EAKIN, Judge.

---

2. Effect of investment by husband in his own name of wife's separate estate to create trust in her favor, see notes in Ann. Cas. 1915D, 625, 643, 649; Ann. Cas. 1918E, 900; 6 L. R. A. (N. S.) 381; 26 L. R. A. (N. S.) 161.

In Banc.

REVERSED AND REMANDED.

For appellants there was a brief over the name of *Messrs. Norblad & Hesse.*

For respondent there was a brief over the name of *Mr. Edward C. Judd.*

BURNETT, J.—In this suit the plaintiff, as trustee in bankruptcy of the estate of E. B. Stoner, a bankrupt, sues to set aside a conveyance made by Stoner to his wife the defendant, Angie S. Stoner, on December 8, 1920, with intent to defraud the creditors of the bankrupt. The bankruptcy proceedings were commenced July 22, 1921, and the adjudication of bankruptcy was rendered September 3, 1921. This suit therefore is not one under the federal statutes declaring void a conveyance made within four months prior to the filing of the petition in bankruptcy, 4 U. S. Comp. Stats., Section 9644, subdivision b. The making and delivery of the conveyance sought to be set aside are admitted. The proceedings in bankruptcy are likewise admitted but an intent to defraud in making the conveyance is denied. The affirmative defense is to the effect that all the money invested in the land was the separate property of the wife, and she states in her answer in detail the sources from which it accrued, beginning with some real property which she owned in her own right in South Dakota prior to and at the time of her marriage to her husband, the present bankrupt. In her pleadings, she narrates in detail the subsequent transactions by which she invested and reinvested her money until she had enough to purchase the lands in question, the title of which she

avers was taken in the name of her husband for convenience. In substance, she further alleges that the conveyance from her husband to herself was made without any intent to hinder, delay or defraud creditors and for the reason that, having furnished all the purchase price invested in the lands in dispute, she was the equitable owner thereof. The answer is traversed in important particulars but there is no attempt to plead any estoppel against the defendant wife's assertion of her equitable ownership of the property, nor any other affirmative matter whatever. At the trial in this state of the pleadings, the plaintiff offered only two witnesses, one the husband and the other his son.

All that was undertaken to be proven by the son was that he, without the knowledge of his mother the defendant wife, and against the direction of his father, the bankrupt, had made a property statement to the representative of a commercial agency to the effect that as partner with himself in an automobile business, his father was the owner of the tract of land here in controversy. As to the bankrupt's testimony, the efforts of the plaintiff's counsel seems to have been to prove by him that no money consideration passed from his wife to him at the time of the execution of the deed now sought to be set aside. He admitted what is pleaded, that the original deed to the property named him as grantee. By plaintiff's counsel, he was asked this question:

"Q. You know whether at that date or previous to it, whether or not the deed or the legal title to any of that property was in your wife or anybody else, the legal title I am talking about now, Mr. Stoner?"

He answered:

"A. Yes, she owned the property, really."

Further questions and answers to and by this witness are as follows:

"Q. Between your wife and yourself, there was nothing of value that passed between you—she gave you nothing, no property or money for that deed, did she?

"A. No, not then.  I had—

"Q. No, she didn't give you any property or anything of value for that deed at that time?

"A. Why should she?

"Q. Well, Mr. Stoner, I don't know why she should, but I am asking.

"A. She owned the property.

"Q. She didn't—

"A. She did own the property.

"Q. I didn't—

"A. She owned the property.  Why should she give me anything?

"Q. You say she owned the property so that there was nothing that passed between you at that time, was there?

"A. No."

On cross-examination, after repeating the statement thus: "A. It belonged to Angie S. Stoner, my wife," he was asked this question: "Q. Well, now, who paid for that property?"  Without objection being made he answered, "A. She paid for it with money that she had before we were married, that started from that."

He further testified on cross-examination as follows:

"Q. Who paid the purchase price for the various pieces of property that were included in that deed?

"A. She did.

"Q. With whose money, whose funds or with—

"A. She furnished—

"Q. Who furnished the consideration?

"A. She furnished the money.  * *

"Q. I say who furnished the money or any other consideration for the various pieces of property described in that deed?

"A. Well, she did really—my wife furnished the money—she was—I was broke when I came to Astoria.

"Q. Well, did you ever put a dollar of your own individual money for the purchase of any of that property or did you furnish any other consideration of any kind or description whatsoever that went into the purchase of that property?

"A. I don't think so."

On redirect examination, in response to questions by plaintiff's counsel as follows, he testified thus:

"Q. Now then, I will ask you this, Mr. Stoner, you say this property belonged to your wife—you say you didn't contribute a five-cent piece to the purchase of it, that right?

"A. I think it is.  I don't claim anything came out of my pocket.

"Q. You didn't contribute five cents to the purchase of that property, did you?

"A. [No response.]

"Q. Isn't that what you said?

"A. Yes, I think that is just what I said.

"Q. That is what you said?

"A. Yes."

1, 2. The witness narrates in substance that he was a locomotive engineer and that his wife lived upon and managed the realty involved and took care of the family while, by the exigencies of his employment, he was compelled to be absent from home, living most of the time in Portland while she lived on the land near Astoria in Clatsop County.  Vouching as he must, under such authorities as *State* v. *Steeves,* 29 Or. 85 (43 Pac. 947); *Sabin* v. *Kyniston,* 81 Or. 358 (159 Pac. 69); *Chance* v. *Graham,* 76 Or. 199 (148 Pac. 63); *State* v. *Merlo,* 92 Or. 678 (173 Pac. 317, 182 Pac. 153), for the credibility of the husband bankrupt as a witness, the plaintiff must take the consequences of a fair construction of that witness' testimony.  The

testimony quoted, which is all there is on that subject, does not prove the allegations of the complaint. It is hornbook law that where one person furnishes the money which is invested in land and the title taken in the name of another, the latter is but a trustee for the benefit of the former and that the one who furnishes the money is the real equitable owner of the property. The question here involved has been considered many times by this court. The precedents in this state are collated in *Allen* v. *Dodge,* 102 Or. 466 (202 Pac. 717).

3. It is not necessary, as plaintiff argues in his brief, that the defendant herself be required to go upon the witness-stand in person and give testimony as to the origin of her property. All that she is required to dó is to be able to show from the testimony, from whatever source it arises, the actual good faith and equity of the transaction, and this she must do because the parties to the conveyance attacked are husband and wife which, being true, equity requires good faith on her part to appear from the testimony to sustain the deed. But for that purpose she is entitled to avail herself of any legitimate testimony appearing in the record, no matter who produces it, and if that result appears from the plaintiff's own testimony, it redounds to her benefit, although she may never have opened her mouth as a witness. If the plaintiff proves the defendant's case, she is entitled to enjoy the result.

The decree of the Circuit Court favorable to the plaintiff is reversed and the suit dismissed.

REVERSED AND SUIT DISMISSED.